Accordingly, the summary judgment in favor of defendants is affirmed.

BOX SEAT SUBSCRIPTION TELEVISION, PLAINTIFF-APPELLANT, v. MARY HOLLENBACK, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 9, 1980—Decided January 23, 1981.

Before Judges FRITZ, POLOW and JOELSON.

*Lowenstein, Sandler, Brochin, Kohl, Fisher & Boylan,* attorneys for plaintiff.

PER CURIAM.

Plaintiff brought a contract action in the Small Claims Division of the Bergen County District Court seeking to recover charges it claimed were due from a subscriber.[1] Both parties appeared without counsel.[2] Plaintiff appeals from an adverse judgment.

After two persons—apparently the plaintiff's representative, one Mr. Weiss, and defendant—were sworn, the "trial" commenced with the judge asking *defendant*, "What was the matter with your job?" Defendant was required to defend without any proof at all having been sought by the judge respecting the contract. As a matter of fact, even now we have no idea at all what the contract was except that plaintiff's brief tells us (without supporting references to the transcript, a clear violation of *R.* 2:6–2(a)(4)[3]) it was a service agreement. We know nothing at all from anyone respecting the duration of that agreement, the cost to the subscriber or the availability of cancellation privileges. We do not even know if there was a written agreement, except for the allegation of Mr. Weiss that

---

[1]We presume this to be the gravamen of the charge. The summons and complaint contains as the claim only a rubber stamped "BREACH OF CONTRACT FAILURE TO PAY CHARGES." The transcript is 52 typewritten lines on a little more than two typewritten pages.

[2]We presume plaintiff is a corporation and that an individual who responded to the judge's questions respecting plaintiff's position qualified under *R.* 6:11. The record is singularly uninformative on these matters.

[3]Plaintiff's brief continues this dereliction at length and in great detail in its statement of facts. There we are told about such things as the encoding and decoding of broadcast signals, matters not even remotely touched upon in the record.

"when the installation was completely satisfactory" the "work order was signed." We do not know of any particular warranties the agreement might have contained or, for that matter, precisely what plaintiff's obligation was under the contract. From the record, neither did the trial judge.

It would appear from defendant's premature defense that "[i]t played too loud." No other complaint to the operation appears. Evidently this was enough, though, for defendant's husband to tell defendant "he wanted it taken out."

Then came plaintiff's belated turn to prove its case. The following constitutes plaintiff's whole case:

THE COURT: Do you know anything about this job?

MR. WEISS: Excuse me?

THE COURT: Do you know anything about this job?

MR. WEISS: Not specifically. I don't go out and do installations. But again, the work order was signed when the installation was completely satisfactorily and the money under this contract is, is due us in the amount of $51.06.

There were payments that were made that totalled $60—

THE COURT: Apparently you have a lot of dissatisfied customers.

MR. WEISS: Not really, your Honor. We have over 11,000 customers.

THE COURT: And these are the only two dissatisfied ones? [4]

MR. WEISS: No matter what you do at any point there is always going to be somebody dissatisfied and we realize that.

After a brief volunteered précis of her original testimony by defendant, the judge concluded the trial abruptly:

THE COURT: Okay. I'll dismiss the complaint.

You've only got 2 out of 11,000. You're not doing so bad.

We are not insensitive to the overwhelming demands on the time of the district court. We are also aware that the very purpose of its small claims division is to make legal redress quickly and inexpensively available and for that benefit a litigant ought to expect to sacrifice certain of the formalities and some expendable ceremony. But no litigant should be asked to accept justice of a lesser quality than that to be found in any

---

[4]The reference is to another action brought by the same plaintiff tried the same day.

other court. Nor should he be subjected to any process or procedure likely to endanger that quality or make it appear to that litigant that his case is nothing but a poor relative of the more affluent "upper court" brother.

Every case in every court before every judge is to the contesting litigants probably the most important event taking place in their lives at that time. In no other court is the recognition of this fact more important than in the small claims division where the amount involved almost always precludes counsel, as a result of which the need for care and patience by the judge becomes not less important, but more compellingly urgent.

We do not believe these standards were met in this case. As a matter of fact it is impossible for us on this record to discern (1) what the terms of the contract sued upon were and (2) who breached them and to what extent. This is without regard to such considerations as orderly procedure (at the very least with respect to whose obligation it is to proceed with the proofs), burdens of proof and the availability (or unavailability) of presumptions. In the circumstances here present, meaningful review is as impossible as is our ability to assure the litigants that the quality of justice did not suffer.

Every judge participating in this opinion has practiced in and later sat at one time or another in the county district court. As noted above we are not at all insensitive to the sometimes petty bickering, the frivolous claims, the speech makers, those who cajole or impose or deceive or attempt to deceive, and always the crowded calendars and the exigencies of time. We are confident that in many if not all of the cases, acceptable shortcuts can be utilized to make the difficult burdens of the court manageable at least. For example, the forwarding of a prima facie case in the first instance might easily be accomplished simply by asking the sworn plaintiff whether if he were to testify he would repeat the allegations of his complaint. In that manner, the defendant would know for certain of that with which he was charged, under testimonial oath, and the record would reflect

the issues. In cases in which the complaint itself is so lacking in detail as to be essentially meaningless, as in this case, the judge might easily and helpfully first simply inquire, for instance, as to whether the contract was oral or written, what goods or services were promised and the nature of the failed or refused consideration. Such a record would permit an understanding defense to the claim and intelligent review. This approach would also facilitate expeditious inquiry of defendant who might then be asked simply what he had to say in response to this.

Beyond these considerations, we note the total absence of any findings of fact in the matter before us. "Okay. I'll dismiss the complaint." hardly serves the function absolutely required by *R.* 1:7–4. *State v. Singletary,* 165 *N.J.Super.* 421, 424–425 (App. Div.1979), certif. den. 81 *N.J.* 50 (1979); *Kenwood Assocs. v. Englewood Bd. of Adj.,* 141 *N.J.Super.* 1, 4 (App.Div.1976); *Reiser v. Simon,* 63 *N.J.Super.* 297, 300–301 (App.Div.1960). This dereliction alone would require reversal.

We reverse and remand for a new trial. No costs.