**Robert David FIGUEROA, Plaintiff,**

v.

**Audrey P. BLACKBURN, Defendant.**

**No. Civ.A. 98–3041(GEB).**

United States District Court,
D. New Jersey.

March 10, 1999.

Elizabeth Macron, Law Offices of Terence M. King, Lavallette, NJ, for plaintiff.

Lyle P. Hough, Jr., Department of Law, Trenton, NJ, for defendant.

## OPINION

WOLFSON, United States Magistrate Judge.

Defendant, Municipal Court Judge Audrey P. Blackburn, J.M.C., ("Judge Blackburn"), moves for the entry of summary judgment against plaintiff, Robert David Figueroa, ("Mr.Figueroa"), on the grounds of absolute judicial immunity. The parties

have consented to the jurisdiction of a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and Fed.R.Civ.P. 73, solely for the adjudication of the instant motion. The Court, having reviewed the moving papers, opposition and reply thereto, considers this matter pursuant to Fed. R.Civ.P. 78. For the following reasons, defendant's motion for summary judgment is granted.

## Factual Background

The instant lawsuit stems from Mr. Figueroa's appearance before Judge Blackburn in the Trenton Municipal Court on July 8, 1996, for his arraignment on two harassment charges filed by New Jersey Superior Court judges. During these proceedings, Judge Blackburn ordered Mr. Figueroa's arrest and subsequently sentenced him to thirty days in prison for contempt of court. The following facts are not in dispute.

Mr. Figueroa was arrested on July 3, 1996, after he allegedly harassed two Mercer County Superior Court judges who were assigned to Mr. Figueroa's divorce and custody dispute over his children. Mr. Figueroa was charged with two counts of harassment under N.J.Stat.Ann. § 2C:33–4A. *See Certification of Lyle P. Hough, Jr. dated January 19, 1999,* (hereinafter *"Hough Cert."*), Exhibit 5 (Arrest Docket dated July 3, 1996). On July 8, 1996, Mr. Figueroa appeared, *pro se,* before Judge Blackburn at the Trenton Municipal Court for his arraignment on these charges. At the commencement of the arraignment proceedings, Mr. Figueroa stated that he was present to "challenge [the] jurisdiction" of the Trenton Municipal Court in this matter. After Mr. Figueroa apparently refused to both come forward and turn off a tape recorder in his possession, Judge Blackburn ordered his arrest.[1]

Following Mr. Figueroa's arrest and removal from the courtroom, Judge Blackburn entered a "Contempt of Court" Order against Mr. Figueroa sentencing him to thirty days in the Mercer County Correction Center.[2] *See Hough Cert.,* Exhibit 10 (Contempt of Court Order dated July 8, 1996). Notably, Mr. Figueroa was prevented from an immediate appeal of his prison sentence because Judge Blackburn inexplicably failed to provide him with the automatic five-day stay of sentence as pro-

---

1. The complete transcript of the July 8, 1996, arraignment proceeding is as follows:
   UNKNOWN SPEAKER: Robert Figueroa?
   THE COURT: Robert Figueroa?
   MR. FIGUEROA: There is a Robert David Figueroa. However—there's a Robert David Figueroa, however, I'm not entering a plea. I'm here to challenge jurisdiction—
   THE COURT: Sir, would you come forward, please?
   MR. FIGUEROA: Thank you, Your Honor.
   THE COURT: And turn off the tape recorder.
   MR. FIGUEROA: Excuse me, Judge—
   THE COURT: Turn off the tape recorder.
   MR. FIGUEROA: Excuse me, Judge. I'd like to start it—and basically—
   THE COURT: Excuse me, sir. Turn off the tape recorder, and—and come forward.
   MR. FIGUEROA: Excuse me, Judge—
   THE COURT: Officer, just arrest that man, please.
   MR. FIGUEROA:—first of all, it's a county jurisdiction.
   THE COURT: Officer—
   MR. FIGUEROA: I have papers here.
   THE COURT: Officer, would you just arrest him, please?
   OFFICER: Yes, Your Honor.
   THE COURT: Thank you.
   MR. FIGUEROA: Excuse me, Judge? I'm challenging—I'm challenging jurisdiction of the Court—pardon?
   UNKNOWN SPEAKER: Follow him.
   THE COURT: Just follow the officer, please. *Hough Cert.,* Exhibit 9 (*State v. Robert David Figueroa,* Docket No. 96–8767, 96–8768, Transcript of Arraignment date July 8, 1996).

2. In the July 8, 1996, Contempt of Court Order, Judge Blackburn listed the following reasons for citing Mr. Figueroa for contempt:
   Mr. Figueroa refused to come forward to be arraigned on the charges which had been brought against him on April 12. He refused to be quiet. He was loud and disruptive and refused to comply with the orders of the court.
   *Hough Cert.,* Exhibit 10. Judge Blackburn subsequently filed a certification on July 24, 1996, in which she attests to these facts. *See id.* at Exhibit 30 (Certification of Audrey P. Blackburn dated July 23, 1996).

vided by N.J.Cт.R. 1:10–1. Moreover, Judge Blackburn did not set bail. On July 16, 1996, Mr. Figueroa, with the assistance of counsel, filed an appeal from Judge Blackburn's contempt order in the New Jersey Superior Court.

Additionally, on July 16, 1996, Mr. Figueroa's counsel, Elizabeth Macron, Esq., delivered a letter to Judge R. Kevin McGrory, the presiding judge in the Trenton Municipal Court, requesting the release of Mr. Figueroa on his own recognizance or on a reasonable bail. The letter was copied to Judge Blackburn. *See Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment dated January 7, 1999,* (hereinafter *"Plaintiff's Opposition Brief"*), Exhibit C. These requests were subsequently denied. *See Plaintiff's Opposition Brief,* at p. 2. On July 19, 1996, Mr. Figueroa appeared before Judge Blackburn to enter his plea on the two harassment charges. During these proceedings, Ms. Macron once again requested the aforementioned relief, but Judge Blackburn instructed that such relief could only be obtained from the New Jersey Superior Court. *See Hough Cert.,* Exhibit 20 (*State v. Robert David Figueroa,* Docket No. 96–8767, 96–8768, Transcript of Hearing dated July 19, 1996), at p. 4–5.

On July 22, 1996, Mr. Figueroa's motion for the stay of his thirty-day contempt sentence, which was pending a *de novo* appeal, was granted by Judge Paulette Sapp–Peterson, J.S.C.. *See id.* at Exhibit 25 (Order of the Court dated July 22, 1996). On July 24, 1996, after Mr. Figueroa had been incarcerated for fourteen days, and two days after Judge Sapp–Peterson released him, Judge Blackburn filed a certification, as required by N.J.Cт.R. 1:10–1, listing her reasons for holding Mr. Figueroa in contempt of court. *See id.* at Exhibit 30 (Certification of Audrey P. Blackburn dated July 23, 1996). Next, on August 14, 1996, Judge Samuel Sachs, J.M.C., presiding over Mr. Figueroa's arraignment proceedings in Judge Blackburn's absence, acknowledged the existence of a state court directive promulgated by the late-Chief Justice Wilentz which provided for the referral of any case involving a judge to the assignment judge of the county in which the case was docketed.[3] Based on this directive, Judge Sachs referred the two harassment charges to the Mercer County Superior Court.[4] *See id.* at Exhibit 33 (*State v. Robert David Figueroa,* Docket No. 96–8767, 96–8768, Transcript of Hearing dated August 14, 1996).

On December 23, 1996, Judge Robert Figarotta, J.S.C., granted the State's motion to dismiss the two harassment charges brought against Mr. Figueroa. *See Plaintiff's Opposition Brief,* Exhibit H (Order dated December 23, 1996). Further, on February 21, 1997, Judge Alan J. Pogarsky, J.S.C., after considering Mr. Figueroa's appeal of the contempt conviction, and the State's consent to a reversal of that conviction, entered an Order reversing

3. The parties have been unable to obtain a copy of this directive after making a number of attempts to do so, and indeed this Court's own inquiries to the Supreme Court of New Jersey and the Administrative Office of the Courts have also been fruitless. Thus, the precise language of Chief Justice Wilentz's directive can not be analyzed by the Court. However, for purposes of this Opinion, the Court will give the plaintiff the benefit of the doubt and assume the directive's existence as well as its alleged mandate to refer such cases to the assignment judge of the county in which the action was filed.

4. During the hearing, Judge Sachs explained that the directive mandated that if a lawsuit involving a judge or a judge's immediate family is brought in a particular county, the suit must be referred to the assignment judge of that county. Judge Sachs noted that in this case, however, one of the victims of Mr. Figueroa's alleged harassment was the assignment judge of the county in which the case was filed. As a result, Judge Sachs generally referred the two harassment charges to the Mercer County Superior Court so that it may resolve the issue as to which state court judge should be assigned these cases. *See Hough Cert.,* Exhibit 33.

Judge Blackburn's order. *See Hough Cert.*, Exhibit 35 (*State v. Robert David Figueroa*, Municipal Appeal No. 39–96, Order Reversing Conviction, dated February 21, 1996).

On July 29, 1998, Mr. Figueroa filed this civil rights complaint in the New Jersey District Court naming Judge Blackburn as the sole defendant. In this action, plaintiff asserts that Judge Blackburn's acts deprived him of his rights under the First, Fourth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Article 1, paragraphs 6, 7, 10, and 12 of the Constitution of the State of New Jersey. Mr. Figueroa further alleges that as a result of his arrest and incarceration, he suffered "physical injury, scarring, exposure to unsafe, unsanitary conditions and exposure to contagious disease." *Plaintiff's Complaint and Jury Demand filed June 29, 1998*, pp. 1, 3.

The instant motion was filed by Judge Blackburn on January 19, 1999. In her moving brief, Judge Blackburn argues that she should be granted summary judgment on the grounds of absolute judicial immunity. Defendant claims that the doctrine applies in this case because the arrest of Mr. Figueroa and the subsequent entry of the contempt order were judicial acts made without a clear absence of all jurisdiction. Arguing that the municipal court possessed jurisdiction to arraign Mr. Figueroa on the two harassment charges, Judge Blackburn concludes that she is entitled to immunity for any procedural error she may have committed in connection with citing Mr. Figueroa with contempt.

Plaintiff opposes the entry of summary judgment on four grounds. First, Mr. Figueroa contends that Judge Blackburn's "warrantless arrest order, issued *sua sponte* from the bench" did not constitute a judicial act. *Plaintiff's Opposition Brief*, at p. 3. Specifically, the plaintiff maintains that the Judge Blackburn's acts during the July 8, 1996, proceedings amounted to nothing more than a false arrest and false imprisonment, as defined by N.J.STAT.ANN.

§ 2C: 13–3. Second, Mr. Figueroa argues that Judge Blackburn operated in the complete absence of jurisdiction as to both the harassment and contempt matters. Third, plaintiff opposes defendant's assertion of absolute judicial immunity on the ground that municipal court judges only possess limited jurisdiction and thus should only be afforded qualified immunity for their judicial acts. Fourth, Mr. Figueroa's opposition brief extensively quotes from Judge Learned Hand's opinion *Gregoire v. Biddle*, 177 F.2d 579 (2d Cir.1949), to make the public policy argument that denying Judge Blackburn immunity in this case would not frustrate the underlying purposes of the judicial immunity doctrine. *See infra*, note 5 (further discussing plaintiff's public policy argument).

In her reply brief, Judge Blackburn addresses each of the four arguments made by plaintiff in his opposition brief. As to whether the contempt order was a judicial act, the defendant points out that during the July 8, 1996, proceedings, Mr. Figueroa dealt with her in her judicial capacity. Defendant further argues that a ruling which turns out to be legally incorrect can nonetheless qualify as a judicial act. In addressing plaintiff's argument that she lacked subject matter jurisdiction over the harassment charges, Judge Blackburn maintains that N.J.STAT.ANN. § 2B:12–17 and –19 provide the municipal courts of New Jersey with jurisdiction over the arraignment of disorderly and petty disorderly persons offenses. Further, defendant alleges that a procedurally flawed contempt citation does not equate to a complete lack of jurisdiction over the contempt ruling. Next, as to Mr. Figueroa's contention that New Jersey municipal courts only possess limited jurisdiction and as such are not afforded absolute judicial immunity, Judge Blackburn cites case law which directly contradicts plaintiff's argument. Finally, Judge Blackburn discounts Mr. Figueroa's public policy argument by asserting that the underlying rationale of the judicial immunity doctrine was not

frustrated in this case because plaintiff was afforded the right to appeal the contempt citation.[5]

### Discussion

### I. Summary Judgment

Federal Rule of Civil Procedure 56 empowers a court to enter summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has satisfied this initial burden, the opposing party must establish that a genuine issue exists. *See Jersey Central Power & Light Co. v. Lacey Township,* 772 F.2d 1103, 1109 (3d Cir.1985), *cert. denied,* 475 U.S. 1013, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986). Not every issue of fact will be sufficient to defeat a motion for summary judgment; issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, the opposing party cannot rest upon mere allegations; it must present actual evidence that creates a genuine issue of material fact. *See id.* at 249, 106 S.Ct. 2505 (citing *First Nat'l Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The court must draw all reasonable inferences in the opposing party's favor, and must accept the party's evidence when considering the merits of the summary judgment motion. *See Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986).

The facts of the present case are not in dispute. Counsel for Judge Blackburn has provided this Court with a certification dated January 19, 1999, to which a number of police and court documents are annexed. Mr. Figueroa does not attack the authenticity of these documents, and, in fact, he attached many of the same documents to his opposition brief. Instead, Mr. Figueroa argues that based upon the undisputed facts the judicial immunity doctrine should not extend to Judge Blackburn's acts of ordering his arrest and holding him in contempt of court. Thus, it is incumbent upon Judge Blackburn to carry the burden of demonstrating that the requirements of the judicial immunity doctrine have been satisfactorily met under the facts of this case. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

### II. Judicial Immunity

It is a well-established principle of Angelo–American jurisprudence that judges are generally afforded absolute immunity from civil suits for money damages. *See Mireles v. Waco,* 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Forrester v. White,*

---

5. The major issue addressed by plaintiff in his public policy argument is whether judicial immunity should be extended to cases where the complainant is barred from seeking appellate correction of error. In his opposition brief, plaintiff contends that Judge Blackburn's failure to provide him a five-day stay of his thirty-day prison sentence, as provided by N.J.CT.R. 1:10–1, prevented him from immediately appealing the contempt citation. Mr. Figueroa further asserts that immunity should not be offered in this case because doing so would defeat the fundamental justification of the doctrine, i.e. a litigant who is aggrieved by a judge's ruling generally may not sue the judge but he may appeal the decision. *See Plaintiff's Opposition Brief,* pp. 8–10 (citing J. Randolph Block, Stump v. Sparkman *and the History of Judicial Immunity,* 1980 DUKE L.J.

879, 924). Having been denied the five-day stay of Rule 1:10–1 to appeal the contempt order and its imposition of a thirty-day prison sentence, plaintiff concludes that the judicial immunity doctrine should not absolve Judge Blackburn because the present civil suit is his only avenue of redress.

Notwithstanding Mr. Figueroa's inability to file an immediate appeal of the contempt order within the five-day window period of Rule 1:10–1, defendant emphasizes that Mr. Figueroa was eventually given an opportunity to appeal the contempt citation via an application for stay of contempt. Judge Blackburn points out that plaintiff did in fact take advantage of this relief when he filed such an application, which was subsequently granted by Judge Paulette Sapp–Peterson, J.S.C., on July 22, 1996.

484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher*, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871). Simply stated, the doctrine of judicial immunity is justified by strong public policy which recognizes that the independence and impartiality of the judiciary might be compromised if judges are exposed to the threats of civil liability for actions taken in their judicial capacity. *See Antoine v. Byers & Anderson*, 508 U.S. 429, 435, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993). "For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley*, 80 U.S. at 347. If this legal principle were otherwise and judges were vulnerable to personal liability for their erroneous rulings, then the ominous threat of an "avalanche of suits, most of them frivolous but vexatious," would cause judges to cower from the adjudication of controversial issues which could lead to civil liability. *Forrester*, 484 U.S. at 226–27, 108 S.Ct. 538.

The United States Supreme Court has declared that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority, [nor] if his exercise of authority is flawed by the commission of grave procedural errors." *Stump*, 435 U.S. at 356, 98 S.Ct. 1099. *See also Bradley*, 80 U.S. at 347 ("Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are preformed. The purity of their motives cannot in this way be the subject of judicial inquiry."); *O'Neil v. City of Lake Oswego*, 642 F.2d 367, 370 (9th Cir.1981) ("Intent, it should be noted, plays no role in the foregoing analysis. Evil intent is not a sufficient element for piercing judicial immunity. . . ."). Moreover, the Supreme Court has stated that

the judicial immunity doctrine applies to § 1983 actions. *See Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Therefore, while this Court cannot determine from the record alone whether Judge Blackburn's failure to abide by the clear procedural mandates of N.J.Ct.R. 1:10–1 was a result of ignorance of the law or its intentional disregard, the case law makes clear that this Court need not engage in such inquiry since the intent of the defendant, even if malicious, does not impact on the judicial immunity analysis. *See Stump*, 435 U.S. at 356, 98 S.Ct. 1099.

Judicial immunity is "immunity from suit, not just from an assessment of damages." *Mireles*, 502 U.S. at 11, 112 S.Ct. 286. In other words, the doctrine not only operates to shield judges from damages, it also serves to protect judges from the oft times irksome process of litigation, "which can be equally chilling of judicial independence regardless of its outcome." *O'Neil*, 642 F.2d at 370. The judicial immunity doctrine was meant to curb the chilling effect which may result from the possible result of parties filing "sore loser" actions against judges. *See id.* Thus, the immunity afforded by the doctrine should apply at the summary judgment stage of the litigation in order to refrain from such situations as having to call a judge to trial on a case filed by a disgruntled litigant alleging evil intent. *See id.*

Though the sweep of judicial immunity is broad, *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir.1997) (citations omitted), there are two sets of circumstances which circumscribe the doctrine. First, a judge is not afforded judicial immunity from civil liability for any nonjudicial acts, i.e., actions taken when the judge was not operating in her judicial capacity. *Mireles*, 502 U.S. at 11, 112 S.Ct. 286; *Forrester*, 484 U.S. at 227–29, 108 S.Ct. 538; *Stump*, 435 U.S. at 360, 98 S.Ct. 1099. Second, even if the act is judicial in nature, a judge is not immune for any actions

taken in the "complete absence of all jurisdiction." *Mireles,* 502 U.S. at 12, 112 S.Ct. 286; *Stump,* 435 U.S. at 357, 98 S.Ct. 1099. Thus, if Judge Blackburn's actions were judicial actions not taken in the complete absence of all jurisdiction, she must be afforded protection from Mr. Figueroa's civil suit. The Court will next discuss these two limitations on the judicial immunity doctrine and their application to the facts at hand.

## A. Judicial Act

■ The Supreme Court has posited that whether or not an act is judicial depends on "the 'nature' and 'function' of the act, not the 'act' itself." *Mireles,* 502 U.S. at 13, 112 S.Ct. 286 (quoting *Stump,* 435 U.S. at 362, 98 S.Ct. 1099). Typically, courts look to two factors in making this determination. First, courts look to the nature of the act, i.e. whether the act is a measure normally performed by a judge. *See id.* at 12, 112 S.Ct. 286. Second, courts evaluate the expectations of the parties, i.e. whether the parties dealt with the judge in her judicial capacity. *See id.* These factors are to be broadly construed in favor of granting immunity, "and immunity should not be denied where the denial carries the potential of raising more than a frivolous concern in a judge's mind that to take proper action might expose him to personal liability." *Malina v. Gonzales,* 994 F.2d 1121, 1124 (5th Cir.1993).

In the case at hand, Judge Blackburn ordered the arrest and imprisonment of Mr. Figueroa after he allegedly declined to come forward to be arraigned and refused to be quiet and comply with the court's directives. *See Hough Cert.,* Exhibit 30 (Certification of Audrey P. Blackburn dated July 23, 1996). Judge Blackburn held Mr. Figueroa in contempt of court and imposed a thirty-day prison sentence as punishment for these acts. *See id.* In his opposition brief, Mr. Figueroa maintains that Judge Blackburn's acts cannot be considered judicial acts because they were neither expected by the parties nor were they legal in nature.

Despite plaintiff's contentions, this Court finds that Judge Blackburn's order for Mr. Figueroa's immediate arrest and her subsequent contempt order which sentenced plaintiff to thirty days in prison were indeed judicial acts. As to the nature of Judge Blackburn's acts this Court construes them to be functions normally performed by a judge. *See Mireles,* 502 U.S. at 12, 112 S.Ct. 286. There is no question that in N.J.STAT.ANN. § 2A:10–1[6] and N.J.CT.R. 1:10–1[7] the State of New Jersey has expressly granted its judges the power to punish individuals for contempt of court. According to these provisions, Judge Blackburn had the power to cite Mr. Figueroa for contempt when he refused to follow the court's directions. Moreover, there is a plethora of case law which provides that judges are performing judicial acts when they take action to maintain order in their courtroom and/or subsequently hold disruptive individuals in contempt. *See, e.g., Mireles,* 502 U.S. at 10–13, 112 S.Ct. 286 (holding that a judge's

---

**6.** N.J.STAT.ANN. § 2A:10–1 provides in relevant part:

> The power of any court of this state to punish for contempt shall not be construed to extend to any case except the:
> a. Misbehavior of any person in the actual presence of the court;

**7.** N.J.CT.R. 1:10–1 provides in relevant part:

> A judge conducting a judicial proceeding may adjudicate contempt summarily without an order to show cause if:
> (a) the conduct has obstructed, or if continued would obstruct, the proceeding;

> (b) the conduct has occurred in the actual presence of the judge, and was actually seen or heard by the judge;

> (c) the character of the conduct or its continuation after an appropriate warning unmistakably demonstrates its willfulness;

> (d) immediate adjudication is necessary to permit the proceeding to continue in an orderly and proper manner; and

> (e) the judge has afforded the alleged contemnor an immediate opportunity to respond.

order to his courtroom police officers "to forcibly and with excessive force seize and bring plaintiff into his courtroom" was a judicial act); *In re Orthopedic "Bone Screw" Products Liability Litigation,* 132 F.3d 152, 156 (3d Cir.1997) ("The Supreme Court has recognized the inherent power of courts to impose sanctions in order to manage their own affairs and achieve orderly and expeditious disposition of cases. These powers include the power to manage their dockets and impose silence and order on those before the court.") (citing *Chambers v. NASCO Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Link v. Wabash,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)); *Crooks v. Maynard,* 913 F.2d 699, 700 (9th Cir.1990) (finding that a contempt citation is a judicial act); *King v. Love,* 766 F.2d 962, 966 (6th Cir.1985) (holding that jailing an individual for contempt of court was a judicial act); *O'Neil,* 642 F.2d at 369 (same); *Dean v. Shirer,* 547 F.2d 227, 228, 231 (4th Cir. 1976) (judge berating an attorney "with a long string of offensive and threatening epithets, including aspersions as to [the attorney's] ancestry" and "threaten[ing] [the attorney] with physical abuse and ... hav[ing] him put in jail" were all found to be judicial acts); *Berg v. Cwiklinski,* 416 F.2d 929, 931 (7th Cir.1969) (holding that a judge's order directed at a defendant before him to answer incriminating questions during a criminal trial and subsequently citing the defendant for contempt of court when the defendant refused to answer these questions were judicial acts); *Hawkins v. Comparet–Cassani,* No. CV 98–5605 DDP (CWX), 1999 WL 44201 (C.D.Cal. Jan. 25, 1999) (judge using a stun belt on a criminal defendant before her to maintain order in her courtroom was a judicial act); *Wolfgram v. Wong,* No. C–94–3063 EFL, 1995 WL 56597 (N.D.Cal. Feb.3, 1995) (citing "persons in contempt and punishing contempt are functions ordinarily performed by judges...."); *Rodriguez v. Nieves,* 736 F.Supp. 411, 412 (D.P.R.1990) (judge holding plaintiff in contempt of court and sub-

sequently ordering her imprisonment where she was subjected to "inhumane conditions in common imprisonment with drug addicts, lesbians, and all sorts of criminals" were judicial acts). Thus, given the foregoing case law, this Court finds that Judge Blackburn's's acts of ordering Mr. Figueroa's immediate arrest and subsequently sentencing him to thirty-days in prison on a contempt citation were acts normally performed by judges.

As to determining whether Mr. Figueroa dealt with Judge Blackburn in her judicial capacity, the Court is guided by three questions. *See Malina,* 994 F.2d at 1124 (citing *McAlester v. Brown,* 469 F.2d 1280, 1282 (5th Cir.1972)). The first question requires the Court to determine whether the acts at issue occurred in the courtroom or in some other location. The second inquiry explores whether the underlying controversy between the complainant and the judge arose out of a case pending before the court. The third question is whether the judge was indeed acting in her official capacity at the time of the controversy. *See id.*

Taking these three questions into consideration, the Court finds the undisputed facts clearly demonstrate that Mr. Figueroa dealt with Judge Blackburn in her official capacity as a municipal court judge. First, the events which led up to Mr. Figueroa's arrest and subsequent sentencing for contempt of court occurred in the courtroom during his arraignment proceedings conducted on July 8, 1996. Second, Mr. Figueroa's arrest and contempt citation were the results of his refusals to be quiet and come forward to be arraigned on the two harassment charges. Third, it is clear that Judge Blackburn was acting in her official capacity when she ordered Mr. Figueroa's arrest and subsequent imprisonment for contempt of court.

▋ Plaintiff's contention that Judge Blackburn's contempt citation was procedurally flawed and amounted to nothing more than a false imprisonment plays no

part in the determination of whether a judicial act exists under the facts. The question here is not whether Judge Blackburn's acts were erroneous or procedurally flawed, because certainly that conclusion can be drawn from the reversal of Mr. Figueroa's contempt conviction on February 21, 1997, *see Stump,* 435 U.S. at 359, 98 S.Ct. 1099 ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."), but rather, under the two-prong test of *Mireles,* the Court must determine whether Judge Blackburn's acts were judicial in nature, and if so whether she operated in her official capacity when she committed these acts. This Court has found both prongs of the *Mireles* test have been met.

## B. No Clear Absence of Jurisdiction

Finding that Judge Blackburn's acts constituted judicial acts, the Court must now determine whether Judge Blackburn's acts were "taken in complete absence of all jurisdiction." *Mireles,* 502 U.S. at 11–12, 112 S.Ct. 286. As an initial matter, the Court notes that the scope of Judge Blackburn's jurisdiction must be construed broadly because her immunity is directly at issue in this case. *See Stump,* 435 U.S. at 356, 98 S.Ct. 1099. "Indeed some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, or that of the court held by him, or the manner in which jurisdiction shall be exercised." *Bradley v. Fisher,* 13 Wall. 335, 80 U.S. 335, 352, 20 L.Ed. 646 (1871). Neither Judge Blackburn's alleged "commission of grave procedural errors," *id.* at 359, nor any alleged action "taken in excess of [her] authority," *id.,* will deprive her of judicial immunity. As to the distinction between acting in excess of jurisdiction and acting in clear absence of all jurisdiction, the Eighth Circuit has recently stated that "a judge acts in excess of jurisdiction if the act complained of is within his general power of jurisdiction but

is not authorized because of certain circumstances," whereas there "is a clear absence of jurisdiction when a court of limited jurisdiction attempts to adjudicate a case outside of its jurisdiction . . . ." *Duty v. City of Springdale,* 42 F.3d 460, 462 (8th Cir.1994) (quotations omitted).

In his opposition brief, Mr. Figueroa challenges Judge Blackburn's jurisdiction on three separate grounds. First, plaintiff asserts even if Judge Blackburn were found to be acting merely in excess of her jurisdiction, she should not be afforded absolute judicial immunity because New Jersey municipal courts are courts of limited jurisdiction. Second, pursuant to the New Jersey Supreme Court directives authored by the late-Chief Justice Wilentz, discussed *supra,* notes 3 and 4, plaintiff argues that Judge Blackburn acted in complete absence of jurisdiction when she attempted to arraign him on the two harassment charges. Third, Mr. Figueroa contends that Judge Blackburn lacked jurisdiction to hold him in contempt of court because she failed to abide by the procedural guidelines enunciated by N.J.Ct.R. 1:10–1. Specifically, plaintiff asserts that Judge Blackburn violated the mandatory five-day stay of sentence by ordering his immediate incarceration.

### 1. Judicial Immunity and Courts of Limited Jurisdiction

The Court will begin its jurisdiction analysis by addressing plaintiff's argument that Judge Blackburn is not entitled to absolute judicial immunity for her actions because she is a judge of limited jurisdiction. Mr. Figueroa relies on the following exposition:

'it was a general principle, applicable to all judicial officers, that they were not liable to a civil action for any judicial act done by them within their jurisdiction; that with reference to judges of limited and inferior authority it had been held that they were protected only when they acted within their jurisdiction; that if

this were the case with respect to them, no such limitation existed with respect to judges of superior or general authority; that they were not liable in civil actions for their judicial acts, even when such acts were in excess of their jurisdiction. . . .'

*Plaintiff's Opposition Brief,* pp. 7–8 (quoting *Bradley,* 80 U.S. at 335). Assuming that Judge Blackburn did indeed act in excess of her jurisdiction when she ordered Mr. Figueroa's arrest and thirty-day imprisonment, *see infra,* note 9, this Court finds that she is nevertheless afforded protection from plaintiff's civil suit because the doctrine of absolute judicial immunity [8] applies equally to courts of both limited and general jurisdiction. *See King v. Love,* 766 F.2d 962 (1985), *cert. denied,* 474 U.S. 971, 106 S.Ct. 351, 88 L.Ed.2d 320.

New Jersey Municipal Courts are clearly courts of limited jurisdiction. *See, e.g.,* N.J.STAT.ANN. § 2B:12–17 (West 1999) (providing municipal court limited jurisdiction in certain criminal matters). The New Jersey Legislature has provided for municipal court jurisdiction over a number of criminal offenses, including violations of motor vehicle and traffic laws, petty disorderly persons offenses, violations of the fish and game laws, and etc. *See id.* Moreover, it is undisputed that Judge Blackburn was a municipal court judge for the city of Trenton at the time she ordered Mr. Figueroa's arrest and imprisonment.

In *King v. Love,* 766 F.2d 962 (1985), *cert. denied* 474 U.S. 971, 106 S.Ct. 351, 88 L.Ed.2d 320, the Sixth Circuit explicitly dealt with the issue of whether courts of limited jurisdiction are entitled to judicial immunity for acts taken in excess of their jurisdiction. The court answered this question in the affirmative; "we hold that judges of courts of limited jurisdiction are entitled to absolute immunity for their judicial acts unless they act in the clear absence of all jurisdiction." *Id.* at 966.

The panel reached its conclusion by distinguishing the same language contained in the *Bradley* case as plaintiff quoted in his opposition brief. The circuit court began its analysis by stating that the facts of *Bradley* dealt with a court of general jurisdiction, and any statements made by the Supreme Court as to courts of limited jurisdiction were purely dicta. *See id.* Specifically, the *King* court reasoned that the *Bradley* language was a summary of the language in *Randall v. Brigham,* 7 Wall. 523, 74 U.S. 523, 535–36, 19 L.Ed. 285 (1868), which merely made the assumption for the sake of argument that courts of limited jurisdiction were entitled to less protection than courts of general jurisdiction. *See id.* Next, the court noted that the Sixth Circuit as well as other circuits have provided the broader immunity standard to courts of limited jurisdiction. *See id.* at 966–67 (citations omitted). Pointing out that federal courts are courts of limited jurisdiction, the Sixth Circuit further declared that federal case law has applied the absolute judicial immunity standard to federal judges. *See id.* at 967 (citations omitted). Finally, the *King* court opined that applying the broader immunity standard to courts of limited jurisdiction would comport with the public policy rationale, as stated by the Supreme Court in the *Bradley* case, that if a judge

8. Absolute immunity protects actions taken in excess of jurisdiction but not those taken in the clear absence of all jurisdiction. *See Barnes v. Winchell,* 105 F.3d 1111, 1116 (citing *Mireles,* 502 U.S. at 11–12, 112 S.Ct. 286). On the other hand, qualified immunity protects only those actions which were not in excess of jurisdiction. *See Tucker v. City of Montgomery Bd. of Commissioners,* 410 F.Supp. 494, 512 (M.D.Ala.1976) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Absolute immunity applies to judges of both limited and general jurisdiction. *See King v. Love,* 766 F.2d 962 (1985), *cert. denied,* 474 U.S. 971, 106 S.Ct. 351, 88 L.Ed.2d 320. Whereas qualified immunity usually applies to public servants such as police officers, mayors, and attorney generals. *See, e.g., Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (stating that police officers are granted qualified immunity); *Tucker,* 410 F.Supp. at 512 (applying qualified immunity standard to a mayor and an attorney general).

has subject matter jurisdiction over a matter, she should be afforded absolute immunity for her decisions. *See id.* (citing *Bradley*, 80 U.S. at 352).

Indeed, the clear weight of authority has applied the absolute immunity standard to courts of limited jurisdiction. *See, e.g., Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (holding that absolute immunity shielded a municipal court judge from liability under § 1983); *Malizia v. Westchester County Dist. Attorney Office*, No. 98–7043, 1998 WL 712424, at *1 (2d Cir. Oct.1, 1998) (holding that a traffic court judge was absolutely immune from § 1983 suit); *Johnson v. Turner*, 125 F.3d 324, 333 (6th Cir.1997) ("Judicial immunity is available to judges presiding over courts of both general and limited jurisdiction."); *Newton v. Buckley*, No. 96–4202, 1997 WL 642085 (10th Cir. Oct.17, 1997) (applying the absolute immunity standard to a traffic court judge); *Tucker v. Outwater*, 118 F.3d 930 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 562, 139 L.Ed.2d 402 ("local New York state judges of limited jurisdiction enjoy the same immunity accorded to judges of general jurisdiction"); *Barnes v. Winchell*, 105 F.3d 1111 (6th Cir.1997) (holding that both courts of limited jurisdiction and courts of general jurisdiction enjoy absolute immunity); *Cok v. Cosentino*, 876 F.2d 1 (1st Cir.1989) (applying absolute immunity standard to both categories of judges); *Dykes v. Hosemann*, 776 F.2d 942 (11th Cir .1985) (same); *O'Neil*, 642 F.2d at 368 n. 2 (9th Cir.1981) (same); *Martin v. Bicking*, No. 98–5739, 1998 WL 896985, at *2 (E.D.Pa. Dec.10, 1998) ("The doctrine of judicial immunity applies equally to courts of limited jurisdiction . . . as to courts of general jurisdiction."); *Pagano v. Hadley*, 535 F.Supp. 92, 94–95 (D.Del.1982) (applying clear absence of all jurisdiction standard from the absolute immunity doctrine to a justice of the peace); *K.D. v. Bozarth*, 313 N.J.Super. 561, 568–70, 713 A.2d 546 (App.Div.1998) (applying clear absence of all jurisdiction standard as provided by the absolute immunity doctrine to a municipal

court judge). *But see McClain v. Brown*, 587 F.2d 389, 390 (8th Cir.1978) (holding that courts of limited jurisdiction are not immune for acts taken in excess of their jurisdiction).

While the Third Circuit has not specifically addressed this issue, this Court nonetheless finds that application of the absolute judicial immunity standard to a court of limited jurisdiction is appropriate, as found by the *King* case, its progeny, as well as other district courts in this circuit and the New Jersey state courts. Therefore, Judge Blackburn is entitled to absolute immunity for all judicial acts not taken in the complete absence of all jurisdiction. *See King*, 766 F.2d at 966.

## 2. Jurisdiction over Mr. Figueroa's Arraignment

■ Article 6, section 1 of the Constitution of New Jersey provides that "[t]he judicial power shall be vested in a Supreme Court, and other courts of limited jurisdiction. The other courts and their jurisdiction may from time to time be established, altered or abolished by law." Pursuant to N.J.S.A. § 2B:12–17 and N.J.CT.R. 7:1, municipal courts are courts of limited jurisdiction. The New Jersey State Legislature has granted jurisdiction to municipal courts of disorderly persons offenses and petty disorderly persons offenses occurring within their territorial jurisdiction. *See* N.J.S.A. § 2B:12–17 (West 1999). The crime of harassment is defined as a petty disorderly persons offense by N.J.S.A. § 2C:33–4. "A municipal court has authority to conduct proceedings in a criminal case within its territorial jurisdiction prior to indictment subject to the Rules of Court." N.J.S.A. § 2B:12–19 (West 1999). Mr. Figueroa was charged with two counts of harassment, and he was before Judge Blackburn on that fateful day of July 8, 1996, to be arraigned on those charges when the arrest and subsequent imprisonment occurred. Therefore, on its face, the New Jersey statutory

scheme indicates that Judge Blackburn, a municipal court judge, had jurisdiction to arraign Mr. Figueroa for two counts of harassment which were allegedly perpetrated within the city bounds.

Plaintiff nonetheless challenges the municipal court's jurisdiction over the harassment charges based on the New Jersey Supreme Court directive, which provides that a case involving a judge should be transferred to the Superior Court Assignment Judge of the county in which the case was filed. *See supra,* notes 3 and 4 (discussion of the late-Chief Justice Wilentz's directive). In considering this argument, the Court will analyze *Newton v. Buckley,* No. 96–4202, 1997 WL 642085 (10th Cir. Oct.17, 1997), which addresses the judicial immunity doctrine as it pertains to a litigant challenging the jurisdiction of a municipal court.

In *Newton,* a bench warrant was issued after Newton willfully refused to appear before the municipal court for traffic violations. A warrant for his arrest was issued after an altercation occurred when a deputy sheriff attempted to serve the bench warrant. Newton was subsequently arrested and held in county jail. During his arraignment for both the traffic violations and his failure to appear, he repeatedly challenged the court's jurisdiction. The municipal court judge overruled these challenges and ordered Newton to enter a plea. Newton, however, refused to enter a plea and continued to challenge the court's jurisdiction. As a result of his behavior, the judge held Newton in contempt of court and sentenced him to thirty-days in jail. *See id.* at *1.

After Newton filed a civil rights action against the judge, the district court granted the judge's summary judgment motion on the grounds of absolute judicial immunity. On appeal, Newton once again challenged the municipal court's jurisdiction to conduct the arraignment arguing that the statute of limitations had run on the traffic offenses and that the bench warrant was improperly issued in this case. *See id.* at

*1. After a comprehensive discussion of the state statutory scheme regarding municipal court jurisdiction, the Tenth Circuit affirmed the district court's grant of summary judgment and held that Newton's challenges at best show that the municipal court judge had simply exceeded his jurisdiction. The panel concluded that Newton had failed to demonstrate that the judge acted in a clear absence of jurisdiction, as required to overcome the judicial immunity shield from civil liability. *See id.* at *3.

A similar situation is presented by the facts of our case. Mr. Figueroa cannot prevail on his contention that Judge Blackburn lacked jurisdiction to arraign him in light of the late-Chief Justice Wilentz's directive, since he cannot demonstrate that the Trenton Municipal Court acted in clear absence of all jurisdiction. The New Jersey statutory scheme expressly provides that a municipal court has jurisdiction over pre-indictment proceedings of petty disorderly persons offenses, such as harassment. *See* N.J.S.A. § 2B:12–17 (West 1999); N.J.S.A. § 2B:12–19 (West 1999); N.J.S.A. § 2C:33–4 (West 1999). At most, Mr. Figueroa, like the plaintiff in *Newton,* has established that Judge Blackburn exceeded her jurisdiction by attempting to arraign him. *See Newton,* 1997 WL 642085, at *3. Even if Mr. Figueroa made this showing, it would not be enough to overcome the prophylactic effect of judicial immunity. *See Stump,* 435 U.S. at 356–57, 98 S.Ct. 1099 (requiring a showing of " 'clear absence of all jurisdiction' " to overcome immunity) (quoting *Bradley v. Fisher,* 13 Wall. 335, 80 U.S. 335, 351, 20 L.Ed. 646 (1871)).

Assuming arguendo that the aforementioned New Jersey Supreme Court directive prohibited the Trenton Municipal Court from arraigning Mr. Figueroa on the two harassment charges, Judge Blackburn nonetheless did not act in clear absence of all jurisdiction. In *Panayotides v. Rabenold,* No. 98–0022, 1999 WL 41735, at *1 (E.D.Pa. Jan.27, 1999), plaintiff claimed that a state court judge had acted without

jurisdiction, in connection with decisions made prior to the judge's ultimate determination that he lacked jurisdiction to hear the claim at issue. *See id.* at *2. The Eastern District of Pennsylvania disagreed and held that the acts were protected by judicial immunity. The court reasoned that plaintiff's argument had no validity because a court has the "inherent authority over its docket and persons before it even where [the] court ultimately lacks jurisdiction to decide the merits of the case." *Id.* (citing *In re Orthopedic "Bone Screw" Products Liability Litigation,* 132 F.3d 152, 155–56 (3d Cir.1997)).

For the reasons stated by the Third Circuit in *Bone Screw* and reiterated by the district court in *Michael,* Mr. Figueroa's argument that Judge Blackburn acted in clear absence of all jurisdiction has absolutely no merit. *See id.* As was evidenced by Judge Sachs' uncontested arraignment of Mr. Figueroa on August 14, 1996, the Trenton Municipal Court had jurisdiction to arraign plaintiff despite the New Jersey Supreme Court directive. After arraigning plaintiff on the harassment charges, Judge Sachs next acknowledged the existence of this state court directive and he referred the case to the Mercer County Superior Court. It logically follows that, if given the chance, Judge Blackburn could have taken the same procedural approach as Judge Sachs. *See Bone Screw,* 132 F.3d at 156 ("[D]espite this inability of a court to decide the merits of a case over which it lacks jurisdiction, a court does have inherent authority both over its docket and over the persons appearing before it."). Thus, even if the New Jersey Supreme Court directive prevented Judge Blackburn from hearing the merits of the two harassment charges, she retained the inherent authority both over her docket and the persons appearing before her to ultimately decide the jurisdiction issue raised by plaintiff.

### 3. Jurisdiction over the Contempt Citation

■ Next, plaintiff argues that the municipal court lacked jurisdiction to cite him with contempt because Judge Blackburn failed to order a five-day stay of execution of sentence as provided by the New Jersey Court Rules. *See* Rule 1:10–1 (providing that an individual held in direct contempt of court is to be afforded a five-stay of sentence so that he may have the opportunity to appeal the contempt adjudication). However, the essential question here is whether Judge Blackburn acted in clear absence of all jurisdiction in issuing the contempt citation and its corresponding thirty-day prison sentence. If so, defendant is not immune for her actions. Whether or not defendant committed one or more procedural errors is of no significance in this analysis. *See Stump,* 435 U.S. at 356–57, 98 S.Ct. 1099 ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' ") (quoting *Bradley,* 80 U.S. at 351); *Malina,* 994 F.2d at 1125 (citations omitted). In formulating this determination, the Court must draw a distinction between acting in excess of jurisdiction and acting in the clear absence of all jurisdiction.

The United States Supreme Court best drew this distinction over one-hundred years ago when it offered this oft-quoted analogy:

> [I]f a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offenses, jurisdiction over the subject of offenses being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular

act to be a public offence, which is not by the law made an offence, and proceed to the arrest and trial of a party charged with such act ... no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction ....

*Bradley*, 80 U.S. at 352. Although Judge Blackburn allegedly failed to follow the procedural requirements laid down by the New Jersey Court Rules, her decision to cite Mr. Figueroa with contempt and sentence him to thirty-days in jail were not examples of usurped authority. These acts fell squarely within her jurisdiction as a municipal court judge. *See* N.J.Ct.R. 1:10–1; N.J.Stat.Ann. § 2A:10–1 (West 1999). The failure to provide Mr. Figueroa with the mandatory five-day stay was "the sort of 'grave procedural error' that does not pierce the cloak of immunity." *O'Neil*, 642 F.2d at 369. *See also Stump*, 435 U.S. at 359, 98 S.Ct. 1099 ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."); *Cintron*, 736 F.Supp. at 413 (holding that judges are granted immunity when they " 'rule on matters belonging to categories within their jurisdiction, even [if] they fail to comport with procedural niceties necessary to give the court power over the particular matter.' ") (quoting *O'Neil*, 642 F.2d at 370). Therefore, Judge Blackburn's acts are at best more analogous to a criminal court convicting an individual of a nonexistent public offense, i.e. acting in excess of jurisdiction, rather than a probate court trying an individual for a criminal offense, i.e. acting in the clear absence of all jurisdiction.[9] *See id.*

The Court acknowledges that plaintiff has raised serious and substantial questions as to whether Judge Blackburn's contempt citation was procedurally deficient. It must be noted, however, that the issue is not before this Court because the existence of procedural errors plays absolutely no part in the judicial immunity analysis. *See Stump*, 435 U.S. at 356, 98 S.Ct. 1099. However, given the severity of the alleged malfeasance, and further, to ensure that the parties appreciate that this Court takes seriously the quality of justice that is due in every court, and particularly, the municipal court, which is truly "the people's court," the Court feels compelled to make some observations. *Cf. Box Seat Subscription Television v. Hollenback*, 177 N.J.Super. 42, 45, 424 A.2d 861 (App.Div. 1981) ("Every case in every court before every judge is to the contesting litigants probably the most important event taking place in their lives at the time. In no other court is the recognition of this fact more important than in the small claims division where the amount involved almost always precludes counsel, as a result of which the need for care and patience by the judge becomes not less important, but more compellingly urgent.").

The judge presiding over a matter before her has broad discretion in determining when an individual is in direct contempt of court. *See Von Pein v. Von Pein*, 268 N.J.Super. 7, 15, 632 A.2d 830 (App. Div.1993). Direct, or *facie curiae*, contempt has been generally defined as "a disruptive act in the presence of the court, such as the use of offensive words or conduct...." *In re Yengo*, 84 N.J. 111, 123, 417 A.2d 533 (1980), *cert. denied* 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110. Our facts present an example of *facie curiae* contempt of court because Mr. Figueroa's alleged refusals to be quiet and come forward to be arraigned were made during

---

**9.** Given the Court's ruling that Judge Blackburn did not act in the clear absence of all jurisdiction, it becomes unnecessary to answer the question of whether her acts were in excess of her jurisdiction. However, suffice it to say, unlike the criminal court convicting an individual for a nonexistent offense, it is clear that defendant, as a New Jersey municipal court judge, had the jurisdiction to arraign Mr. Figueroa on the two harassment charges as well as cite him for contempt. *See* N.J.Stat.Ann § 2B:12–17 (West 1999); N.J.Stat.Ann. § 2B:12–19 (West 1999); N.J.Stat.Ann. § 2A:10–1 (West 1999).

the court proceeding in the presence of Judge Blackburn.

Judge Blackburn had discretion to determine whether Mr. Figueroa's allegedly disruptive acts during the arraignment proceeding constituted *facie curiae* contempt, but she was nonetheless bound by the procedural guidelines mandated by the case law and the court rules. The New Jersey Supreme Court has stated that:

With few exceptions, every contempt calls for an explanation. Thus, even in summary contempt proceedings ..., the [individual] should be informed of the charge and given an opportunity either to dispel any possible misunderstanding or to present any exculpatory facts that are not known to the court.

*In re Daniels,* 118 N.J. 51, 62, 570 A.2d 416 (1990), *cert. denied* 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333.

During the proceeding at issue, Judge Blackburn neither provided Mr. Figueroa with an explanation of her order to have him arrested, nor did she inform him that he was being charged with contempt of court. Judge Blackburn also failed to provide Mr. Figueroa with an opportunity to exculpate himself or to explain his behavior so as to avoid any misunderstanding with the court. *See supra,* note 1 (complete transcript of the July 8, 1996, arraignment). The imposition of a thirty-day prison sentence at the Mercer County Correctional Center for "brandishing" a tape recorder and refusing to come forward to be arraigned, *Hough Cert.,* Exhibit 30 (Certification of Audrey P. Blackburn dated July 23, 1996), when coupled with the aforementioned omissions, certainly raise grave issues of procedural due process.

Even more disturbing is Judge Blackburn's inexplicable failure to adhere to New Jersey Court Rule 1:10-1, which provides that the "[e]xecution of sentence shall be stayed for five days following imposition and, if appeal is taken, during the pendency of the appeal, provided, however,

that the judge may require bail if reasonably necessary to assure the contemnor's appearance." Judge Blackburn issued a summary contempt order calling for the thirty-day imprisonment of Mr. Figueroa, but failed to provide him a five-day stay of his sentence as mandated by the rule. *See also* Report of the Subcommittee on Summary Contempt, 136 N.J.L.J. 582 (Feb. 14, 1994) (stating that "ordinarily litigants and others in the courtroom should not be peremptorily jailed prior to an opportunity for appellate review ... mandating a stay of any punishment imposed in order to permit an appeal to be taken as well as a stay pending appeal with bail as an option only if reasonably necessary to assure the contemnor's appearance."). In effect, Judge Blackburn denied Mr. Figueroa of the immediate benefits of an appeal by failing to stay her ruling. With great reluctance, nonetheless, the Court must once again reiterate that these errors can play no part in the analysis of whether Judge Blackburn is immune from Mr. Figueroa's Section 1983 suit. *See Stump,* 435 U.S. at 356, 98 S.Ct. 1099 (stating that a judge is not deprived of judicial immunity for procedural flaws, error, maliciousness, or operating in excess of his authority).

Notwithstanding Judge Blackburn's allegedly procedurally flawed contempt citation and prison sentence, the judicial immunity doctrine runs deep in the lifelines of this country's jurisprudence, and the Court is hard pressed to deviate from the well-established legal principles stated in United States Supreme Court precedent dating back to 1871 in *Bradley v. Fisher.* The doctrine serves to prevent judicial officers from being chilled by the constant threat of civil rights lawsuits for making controversial decisions, and thus it must not be occasionally sacrificed whenever a judicial officer commits an erroneous or even vindictive act. *See Gregoire v. Biddle,* 177 F.2d 579, 581 (2d.Cir.1949) (J. Hand) ("In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do

their duty to the constant dread of retaliation."). While Judge Blackburn's acts were not sustained on appeal and further, do not warrant approval from this Court, nonetheless, these acts must be shielded from liability for the good of the judicial immunity doctrine, the judiciary, and the American legal system.[10]

This Court's disagreement with Judge Blackburn's handling of plaintiff's arrest and subsequent prison sentence, does not change the result on this motion. "Disagreement with the action taken by the judge ... does not justify depriving that judge of [her] immunity. Despite unfairness to litigants which sometimes results, the doctrine of judicial immunity is thought to be in the best interests of 'the proper administration of justice ....'" *Stump*, 435 U.S. at 363, 98 S.Ct. 1099 (quoting *Bradley*, 80 U.S. at 347). Under this standard, the public policy favoring the judicial immunity doctrine outweighs any consideration given to the fact that a judge's errors caused the deprivation of an individual's basic due process rights afforded to him under the law. *See id.* Thus, given the foregoing analysis, this Court finds that Judge Blackburn is afforded judicial immunity under the facts of this case because her actions, no matter how procedurally flawed they were alleged to be, are judicial acts not taken in the clear absence of all jurisdiction.

### Conclusion

Based on the foregoing, defendant's motion for summary judgment is granted. An appropriate Order will follow.

---

10. Although Mr. Figueroa is barred from proceeding against Judge Blackburn, here, he had a mechanism of review, of which he availed himself. Mr. Figueroa had the right, and was in fact successful, in being released on bail and ultimately appealing and overturning Judge Blackburn's contempt of court order. Although this relief may ring hollow to plaintiff, who was incarcerated for fourteen days, it is nonetheless all that the law permits and the policies of judicial immunity can tolerate. Ultimately, this Court is not the correct forum in which to obtain relief. If Mr. Figueroa seeks any further vindication or review of the municipal court's actions, then the appropriate avenue is to proceed against defendant before the Advisory Committee on Judicial Conduct, as provided by N.J.Ct.R. 2:15 *et seq*.