**Jack E. TURNER, Plaintiff-Appellant,**

**v.**

**E. T. RAYNES and Bill Edd Jones, Defendants-Appellees.**

No. 79–2037

**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1980.

Rehearing and Rehearing En Banc
Denied March 10, 1980.

Ebb B. Mobley, Longview, Tex., for plaintiff-appellant.

James T. Flynt, Mineola, Tex., for defendants-appellees.

---

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Before GEE, HENDERSON, and HATCHETT, Circuit Judges.

GEE, Circuit Judge:

In this civil rights case, plaintiff Turner was convicted of a nonexistent crime and briefly incarcerated before obtaining release by means of a state writ of habeas corpus. His consequent suit for violation of rights protected by the Constitution and by 42 U.S.C. § 1983 suffered summary judgment on immunity grounds. He appeals, and we affirm.

Even a summary statement of the facts is somewhat startling. Turner and a neighbor had a boundary dispute. The neighbor applied to defendant Raynes, a Texas justice of the peace, for a peace bond, and Turner was duly required to post bond conditioned on his behaving himself peaceably. It is not disputed here that the sole remedy for violating the conditions of such a bond is a suit by the state, brought in a trial court of general jurisdiction, to recover the penalty amount of the bond. Instead, when Turner apparently continued to behave obstreperously, Justice Raynes issued a warrant for his arrest on charges of "Violation of Peace Bond." Deputies of Sheriff Jones arrested Turner pursuant to the warrant, and Justice Raynes tried and sentenced him to a year and a day in jail for the nonexistent crime. Habeas, Turner's release, and this suit followed in rapid succession.

### Sheriff Jones' Qualified Immunity

The court below entered summary judgment for Sheriff Jones grounded in his qualified official immunity. This must be upheld. Under Sheriff Jones' unopposed and undisputed affidavit, he did no more than execute an arrest warrant valid and regular on its face. It is neither alleged in any pleading nor asserted in any affidavit or deposition of record that in doing so he acted in bad faith, or with notice of any infirmity in the warrant. Sheriff Jones'

affidavit asserts that when a warrant is issued, he has no choice but to serve it and no authority to release arrested persons until told to do so by the powers that be. This sworn statement is unopposed in the record, except by an assertion that it is conclusory. Conclusory it may be as to the actual requirements of the law, but as to Sheriff Jones' understanding of his duties, it is succinct and clear: a sworn assertion of his belief that he had no choice but to do what he did, that, in fine, he acted in a good-faith compliance with his duty as he understood it.

It is familiar law that persons such as Sheriff Jones enjoy a qualified immunity from suit for official actions taken in good faith. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Bryan v. Jones*, 530 F.2d 1210 (5th Cir. 1976) (en banc). "A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, [or, as here, a warrant] and being mulcted in damages if he does." *Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). It would be a strange and unworkable rule that required a sheriff, at his peril, to determine the ultimate legal validity of every warrant—regular on its face and issued by proper authority—before serving it. And though the question of good faith will doubtless usually be one for the factfinder, the evidence of it here is undisputed and, indeed, there is no allegation or contention that the sheriff acted otherwise. The real position is that, regardless of Sheriff Jones' established bona fides, he may still be held liable since in fact the warrant upon which he acted was invalid. That is not the law.

### Supreme Court Precedent: Absolute Immunity for Judge Raynes?

A more difficult question is presented by the situation of Justice of the Peace Raynes. The summary judgment in his favor entered below does not rest on the basis of his undoubted defense of qualified immu-

nity for good-faith actions [1] but on the higher peg of the absolute immunity from damages enjoyed by judges for judicial acts, except those taken in the "clear absence of all jurisdiction." *See Stump v. Sparkman*, 435 U.S. 349, 357, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Crowe v. Lucas*, 595 F.2d 985 (5th Cir. 1979). The difficulty in this view arises from the doubtful application of the Supreme Court's "clear absence" test to magistrates such as Judge Raynes; indeed, the very language of the test quoted above comes from the early case of *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872), which, like *Stump* itself, lays great stress in its reasoning on the character of the magistrates there sued as judges of courts of "superior or general"—as opposed to those of inferior or limited—jurisdiction. *Ibid.*

In its opinions over the years, the Court has several times addressed the doctrine of judicial immunity, always in a context of the type to be accorded judges of "superior or general" jurisdiction, frequently contrasting this with the more limited immunity to be accorded magistrates of lesser tribunals. Thus, the immunity that here concerns us is one which appears in Court authority solely as a lay figure in contrast to which another is in part defined. One learns little more of it from these writings than one learns of the zebra when told that the giraffe is a spotted animal with a very long neck, taller and heavier than a zebra. All references to it by the Court appear in expressions that could of necessity rise no higher than dicta, since other questions were being addressed. Were they dicta, however, we would accord them great weight because of their source. A careful consideration of these pronouncements reveals, however, that they are not even this, the Court having been most circumspect in its few expressions on the subject. Some examples are instructive.

In *Randall v. Brigham*, 74 U.S. (7 Wall.) 523, 19 L.Ed. 285 (1869), the Court's first expression in the area, the Court remarked in the course of its reasoning about the immunity of a superior court magistrate:

Now, it is a general principle, applicable to all judicial officers, that they are not liable to a civil action for any judicial act done within their jurisdiction. In reference to judges of limited and inferior authority, it has been held that they are protected only when they act within their jurisdiction. *If this be the case* with respect to them, no such limitation exists with respect to judges of superior or general authority. They are not liable to civil action for their judicial acts, even when such acts are in excess of their jurisdiction . . . . .

*Id.* at 535–36 (emphasis added).

Later, in *Bradley, supra*, again in discussing the immunity of superior magistrates, the Court repeated the above remarks from *Randall*, paraphrasing them slightly:

In considering the questions presented the court observed that it was a general principle, applicable to all judicial officers, that they were not liable to a civil action for any judicial act done by them within their jurisdiction; that with reference to judges of limited and inferior authority it had been held that they were protected only when they acted within their jurisdiction; that *if this were the case* with respect to them, no such limitation existed with respect to judges of superior or general authority . . . . .

80 U.S. (13 Wall.) at 351 (emphasis added).

Next, in *Alzua v. Johnson*, 231 U.S. 106, 111, 34 S.Ct. 27, 29, 58 L.Ed. 142 (1913), the Court construed a statute conferring limited liability on certain Philippine magistrates as not diminishing by implication that of Philippine Supreme Court justices:

[T]his should not be construed to convey such an implication, at least, as to judges of the supreme court. The section is shown to have had in mind inferior judges and the like by its mention of justices of the peace and assessors, as to whom *a different rule has been held to prevail.*

(emphasis added).

Most recently, in *Stump, supra*, the Court avoided even negative textual expressions

---

1. *Gregory v. Thompson*, 500 F.2d 59 (9th Cir. 1974).

tending to define the immunity of lesser magistrates, simply enlarging on that of superior ones. The only possible guidance we discern from *Stump* appears in a delphic footnote comment, picking up and quoting with apparent approval an illustration offered in *Bradley*:

> In *Bradley*, the Court illustrated the distinction between lack of jurisdiction and excess of jurisdiction with the following examples: if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistence crime, he would merely be acting in excess of his jurisdiction and would be immune.

435 U.S. at 357 n. 7, 98 S.Ct. at 1105 n. 7.

It will scarcely do to put too great a strain on a footnote illustration. Even so, from this we can pick out some possible outlines of the Court's pleasure: courts of general or superior jurisdiction are one thing; those of special jurisdiction must stay within it at their peril, so long as the limitation is what we may term a "vertical" one, limiting them to areas of jurisprudence of a particular *kind*: probate, bankruptcy, tax, and so on. If this is the note's meaning, it is not dispositive here, where we view a court of limited but not special jurisdiction and one whose limitation is of a different kind, a "horizontal" one: a Texas justice of the peace has a general jurisdiction, civil and criminal, limited essentially to small matters. In this respect, he more resembles a court of general jurisdiction than he does such special purpose courts as the footnote instances.

Searching for clues to the Court's position, however, we cannot ignore another possible reading of footnote 7: that only a clearly inordinate exercise of unconferred jurisdiction by a judge—one so crass as to establish that he embarked on it either knowingly or recklessly—subjects him to personal liability. Probate judges, bankruptcy judges, and like special-purpose magistrates presumably should know, without being driven to fine distinctions, that they are not to sit in criminal matters. This same skein of analysis occurs in *Bradley*, where the Court seems to stress the necessarily knowing character of the excursion by the magistrate outside his jurisdiction:

> Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority, and for the exercise of such authority, *when the want of jurisdiction is known to the judge*, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in this case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offenses, jurisdiction over the subject of offenses being entirely wanting in the court, *and this being necessarily known to its judge*, his commission would afford no protection to him in the exercise of the usurped authority.

80 U.S. (13 Wall.) at 351–52 (emphasis added).

On the most deferential consideration of all the above Court authority, therefore, we conclude that we are not bound by any decision or by any clear dicta from above. Little or nothing direct has been vouchsafed to us about the yang of this yin-yang figure, if such it be, nor anything definitive on the question of whether it is to be seen as such a figure, where the limits of each area are determined by the extent of the other. This being so, we conclude that we are free to resort to Court authority indirectly bearing on the matter, to lesser authority, and to such limited consideration of policy matters as seems proper to us. All point to

finding Judge Raynes immune to this action.

### Indirect Court Authority, Lower Court Decisions and Policy Matter

The Court's decision in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), three months after that in *Stump, supra*, overruns nice distinctions of general/limited-jurisdiction *judges'* immunity like the tide over a sand castle in its holding that federal hearing examiners and administrative law judges enjoy "absolute immunity from damages liability for their judicial acts." 438 U.S. at 514, 98 S.Ct. at 2915. The Court's analysis and reasoning proceeds along strictly functional lines; indeed, the Court's key assertion is that their roles are so " 'functionally comparable' to that of a judge," *id.* at 513, 98 S.Ct. at 2914, that they must therefore be, like a judge, free to exercise an independent judgment unfettered by fear of personal retaliation, and so forth. If there exist anywhere adjudicative functionaries of specialized and limited powers, surely it is these officers of the executive branch, and as surely it would be ludicrous to hold that state judicial officers fulfilling roles "functionally comparable" to theirs—but within the *judicial* branch—are entitled to less protection than they, when called before federal courts by the operation of 42 U.S.C. § 1983. *See Butz v. Economou, supra* at 500, 98 S.Ct. at 2907–2908 (holding that "there is no basis for according to federal officials a higher degree of immunity from liability when sued for a constitutional infringement as authorized by *Bivens* than is accorded state officials when sued for the identical violation under § 1983 . . . [because] [t]he constitutional injuries made actionable by § 1983 are of no greater magnitude than those for which federal officials may be responsible . . . [and] [t]he pressures and uncertainties facing decisionmakers in state government are little if at all different from those affecting federal officials."). The Court's sweeping decision, unanimous

on this score, makes no mention whatever of its early distinctions between "excess" as opposed to "clear want" of jurisdiction or any other such nice matters, being couched in functional terms entirely.[2] In the face of this approach to administrative immunity, it is scarcely conceivable to us that, were the Court faced squarely—as we are here—with determining the type of damages immunity to be accorded a lesser state judicial officer, it would return to and espouse such an archaic and nonfunctional distinction as its earlier opinions have discussed and hinted at but never adopted. We do not see how two such rules could coexist in the jurisprudence.

Our conclusion that this is no longer American law, if it ever was, is reinforced by such meager authority as we have found on the subject from lower federal courts. Our research has discovered only one opinion from a court of appeals. This is *Owen v. Kronheim*, 113 U.S.App.D.C. 81, 304 F.2d 957 (D.C.Cir. 1962), involving a suit by a lawyer against a municipal court judge of the District of Columbia for slander. Clearly, this is a magistrate of limited jurisdiction, and only federal law applies. The court unhesitatingly applied *Bradley* to ascertain an absolute immunity:

> The Supreme Court has never departed from *Bradley v. Fisher*, 13 Wall. 335, 80 U.S. 335, 351, 20 L.Ed. 646 (1871). There it said:
>
> > " * * * [J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. * * * * "

As in that case a judge of a court of superior or general jurisdiction was sued, there was no occasion for the Supreme Court to say whether the rule there announced applied equally to judges of courts of limited jurisdiction.

---

**2.** Though we need not speculate about the fate of a hearing examiner for, say, the NLRB who

undertook to sentence an employer to a term of years for refusing to bargain in good faith.

But in *Spruill v. O'Toole*, 64 App.D.C. 85, 74 F.2d 559 (1934), we had before us a case in which a judge of the Municipal Court for the District of Columbia had been sued. In effect we applied the holding of *Bradley v. Fisher* when we said:

" * * * [J]udges are not liable for damages in civil actions for any act done in their official capacity while acting within the limits of their jurisdiction. This exemption from liability is, in general, absolute, and a judge cannot be called to account for his official actions by a civil suit at any time or place. * * * "

To the same effect are *Cooke v. Bangs*, 31 F. 640 (C.C.D.Minn.1877), by Mr. Justice Brewer sitting as a circuit justice, and *Yaselli v. Goff*, 12 F.2d 396, 56 A.L.R. 1239 (2nd Cir. 1926), affirmed 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927), cases in which malice on the part of the judge was alleged.

113 U.S.App.D.C. at 83, 304 F.2d at 959.

Two other circuit court opinions in similar cases, one of them from our court, reach the same result, but both concern suits against judges possessing general jurisdiction and hence are not so closely in point as *Kronheim*. *McAlester v. Brown*, 469 F.2d 1280 (5th Cir. 1972) (42 U.S.C. § 1983); *Potter v. LaMunyan*, 389 F.2d 874 (10th Cir. 1968) (Oklahoma common law of false imprisonment and judicial immunity). We have discovered no opinions of federal district courts closely in point, though several involving judges of courts of general jurisdiction reach the same result as *McAlester* and *Potter, supra*, for example, *Picking v. State Finance Corp.*, 332 F.Supp. 1399 (D.Md. 1971).

Finally, we see no reason in policy to apply a different rule to judges exercising limited jurisdiction than to those having a general one. As the Supreme Court has noted, jurisdictional questions are often difficult ones;[3] they are no less difficult for judges of lesser courts than for those of superior ones, and we see no more reason why the former should be required to decide them under the threat of damage suits than should the latter. Nor is relief from higher authority within the judicial system—by appeal or by habeas—any the less available in one instance than in the other; indeed, it becomes less available as one moves up the judicial pyramid and disappears entirely when the Supreme Court is reached. *See Stump v. Sparkman*, 435 U.S. 349, 369–70, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (Powell, J., dissenting). The general tendency to distinguish in critical ways between the status and dignity of local as opposed to "superior" courts seems to have its roots in early power struggles between the English royal courts and the local and ecclesiastical ones, matters of little consequence today. *See* Note, *Filling the Void: Judicial Power and Jurisdictional Attacks on Judgments*, 87 Yale L.J. 164 (1977). We therefore believe that defendant Raynes is entitled to the same immunity, as a justice of the peace, as he would be accorded were he the magistrate of a superior court. If we are correct in this conclusion, he is precisely within the Court's footnote comment in *Stump, supra*, reiterating an example given in *Bradley*: "if a judge of a criminal court should convict a defendant of a non-existent crime, he would merely be acting in excess of his jurisdiction and would be immune." 435 U.S. at 357 n. 7, 98 S.Ct. at 1105 n. 7.

AFFIRMED.

---

3. *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).