

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-27-2000

# Figueroa v. Blackburn

Precedential or Non-Precedential:

Docket 99-5252

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Figueroa v. Blackburn" (2000). *2000 Decisions.* Paper 65.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/65

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 27, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5252

ROBERT DAVID FIGUEROA,

      Appellant

v.

AUDREY P. BLACKBURN

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

D.C. Civ. No.: 98-3041
Magistrate Judge: The Honorable Freda L. Wolfson

Argued: January 11, 2000

Before: BECKER, Chief Judge, ALITO and
BARRY, Circuit Judges

(Opinion Filed: March 27, 2000)

      Elizabeth Macron, Esquire (Argued)
      1807 Grand Central Avenue
      P.O. Box 146
      Lavallette, NJ 08735

      Attorney for Appellant


      Lyle P. Hough, Jr., Esq. (Argued)
      City of Trenton
      319 East State Street
      City Hall
      Trenton, NJ 08608

      Attorney for Appellee

OPINION OF THE COURT

BARRY, Circuit Judge:

This appeal requires us to decide whether judges of
courts of limited jurisdiction, such as the New Jersey
municipal courts, are afforded absolute immunity for their

judicial acts. We hold that they are, as do all of the circuit courts which have decided the issue. We further hold that the Municipal Court Judge's actions which prompted this case were taken in a judicial capacity in a case over which she had jurisdiction. Accordingly, we will affirm.

I.

The facts underlying this appeal are brief, uncomplicated, and not in dispute. On July 8, 1996, plaintiff Robert David Figueroa ("Figueroa") appeared before the defendant, the Honorable Audrey P. Blackburn, J.M.C., a municipal court judge in Trenton Municipal Court, Mercer County, New Jersey, for what was to have been his arraignment on two counts of harassment, in violation of N.J.S.A. 2C:33-4a, petty disorderly persons offenses.1 Figueroa was charged with the offenses after having sent a harassing letter and documents to two New Jersey Superior Court judges who had previously handled his divorce and child custody dispute.

_____

1. Under N.J.S.A. 2C:33-4a, it is a petty disorderly persons offense if any

person, "with purpose to harass another, . . . [m]akes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm." Id.

2

At the outset, Figueroa told Judge Blackburn that he was there not to enter a plea but to challenge the jurisdiction of the Municipal Court over the offenses with which he was charged. Before he could begin his argument, however, Judge Blackburn directed him -- and directed him three times -- to turn off his tape recorder. Figueroa did not do so. As a result, Judge Blackburn ordered that Figueroa be arrested and removed from the courtroom. The entire proceeding began and ended in a matter of minutes. 2

In an order entered following Figueroa's arrest, Judge Blackburn held him in contempt of court, and sentenced

_____

2. The proceeding was recorded:

UNKNOWN-
SPEAKER: Robert Figueroa?
THE COURT: Robert Figueroa?
MR. FIGUEROA: There is a Robert David Figueroa. However --
    there's a Robert David Figueroa, however, I'm not

        here entering a plea. I'm her to challenge
        jurisdiction --
THE COURT: Sir, would you come forward, please?
MR. FIGUEROA: Thank you, Your Honor.
THE COURT: And turn off the tape recorder.
MR. FIGUEROA: Excuse me, Judge --
THE COURT: Turn off the tape recorder.
MR. FIGUEROA: Excuse me, Judge. I'd like to start it -- and
        basically --
THE COURT: Excuse me, sir. Turn off the tape recorder, and --
        and come forward.
MR. FIGUEROA: Excuse me, Judge --
THE COURT: Officer, just arrest that man, please.
MR. FIGUEROA: -- first of all, it's a county jurisdiction.
THE COURT: Officer --
MR. FIGUEROA: I have papers here.
THE COURT: Officer, would you just arrest him, please?
OFFICER: Yes, Your Honor.
THE COURT: Thank you.
MR. FIGUEROA: Excuse me, Judge? I'm challenging-- I'm
        challenging jurisdiction of the Court -- pardon?
UNKNOWN-
SPEAKER: Follow him.
THE COURT: Just follow the officer, please.

App. at 34-36.

3


him to be imprisoned for thirty days at the Mercer County
Corrections Center. She reasoned that

        Mr. Figueroa refused to come forward to be arraigned
        on the charges which had been brought against him on
        April 12, 1996. He refused to be quiet. He was loud
        and disruptive and refused to comply with the orders
        of the court.

App. at 37. Although mandated to stay execution of
sentence by New Jersey Court Rule 1:10-1 ("Execution of
sentence shall be stayed for five days following imposition
and, if an appeal is taken, during the pendency of the
appeal, provided, however, that the judge may require bail
if reasonably necessary to assure the contemnor's
appearance."), Judge Blackburn did not do so. Nor did
Judge Blackburn set bail.3

Figueroa, from jail and with the assistance of counsel,
twice attempted to have Judge Blackburn stay the balance
of his sentence. Both times, however, his attempts were
rebuffed. The second and last attempt came on July 19,
1996, when Figueroa again appeared before Judge
Blackburn for the previously aborted arraignment on the

harassment charges. In response to his request, Judge
Blackburn simply noted that the issue would be resolved by
the Superior Court.

Figueroa filed an appeal to the Superior Court for a de
novo review of his conviction and sentence for contempt. On
July 22, 1996, after having served fifteen days of a thirty
day sentence, he was granted a stay pending appeal and
released on bail. Ultimately, his contempt conviction was
reversed.

On August 14, 1996, while his appeal was pending,
Figueroa appeared before a different municipal court judge,

_____

3. By failing to follow the requirements of N.J. Ct. R. 1:10-1, Judge
Blackburn hampered Figueroa's ability to seek the immediate appellate
review intended by the rule. See App. at 178 (Report of the
Subcommittee on Summary Contempt) (stating that the automatic stay
requirement was proposed because "ordinarily litigants and others in the
courtroom should not be peremptorily jailed prior to an opportunity for
appellate review").

the Honorable Samuel Sachs, for trial on the harassment
charges. Before trial began, however, Judge Sachs
discussed a directive promulgated by the Honorable Robert
N. Wilentz, the late-Chief Justice of the New Jersey
Supreme Court (the "Wilentz directive"), which provided for
the transfer of any case involving a complaint against or on
behalf of a judge or a member of his or her immediate
family or any case in which a judge was to be a witness to
the assignment judge of the county in which the case was
docketed. Because the assignment judge of Mercer County
was an alleged victim of Figueroa's harassment, Judge
Sachs did not commence the trial but, rather, referred the
case to the Superior Court in Mercer County so that it
could be reassigned to an acting assignment judge or
transferred to a different county. The harassment charges
were subsequently dismissed.

Figueroa filed this action on July 29, 1998 in the United
States District Court for the District of New Jersey. In the
one-count complaint, in which Judge Blackburn is named
as the sole defendant, Figueroa seeks damages for the
deprivation of his constitutional rights under the First,
Fourth, Sixth, Eighth and Fourteenth Amendments to the
United States Constitution, and Article I, paragraphs Sixth,
Seventh, Tenth, and Twelfth of the New Jersey State
Constitution. The complaint alleges that Figueroa's arrest
for contempt was contrary to the statutes and rules by
which Judge Blackburn was bound and that at no time did

she have jurisdiction to do what she did.

Judge Blackburn moved for summary judgment on the ground that she was entitled to judicial immunity. With the consent of the parties, and pursuant to 28 U.S.C.S 636(c) and Fed.R.Civ.P. 73, the motion was adjudicated by Magistrate Judge Freda L. Wolfson.

On March 10, 1999, in a comprehensive opinion, the Magistrate Judge granted the motion for summary judgment. See Figueroa v. Blackburn, 39 F.Supp.2d 479, 483 (D.N.J. 1999). She found, first, "that Judge Blackburn's order for Mr. Figueroa's immediate arrest and her subsequent contempt order which sentenced [him] to thirty days in prison were indeed judicial acts." Id. at 486. Next, she determined that although Judge Blackburn was

5

a judge of a court of limited jurisdiction, overwhelming authority supported a finding that she was entitled to judicial immunity. She determined, as well, that Judge Blackburn did not act in the clear absence of jurisdiction and rejected Figueroa's argument that the Wilentz directive had divested her of jurisdiction. Although a copy of the directive had not been produced, the Magistrate Judge assumed for purposes of decision that the directive existed and found:

> [E]ven if the New Jersey Supreme Court prevented Judge Blackburn from hearing the merits of the two harassment charges, she retained the inherent authority both over her docket and the persons appearing before her to ultimately decide the jurisdiction issue raised by plaintiff.

Id. at 492. Finally, she found that although the contempt citation was procedurally deficient, "the issue is not before this Court because the existence of procedural errors plays absolutely no part in the judicial immunity analysis." Id. at 493, 495 (noting that "the public policy favoring the judicial immunity doctrine outweighs any consideration given to the fact that a judge's errors caused the deprivation of an individual's basic due process rights").4

Figueroa filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. S 1291.

II.

We review a grant of summary judgment de novo , viewing all facts and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See Arnold M.

Diamond, Inc. v. Gulf Coast Trailing Co., 180 F.3d 518, 521 (3d Cir. 1999). A motion for summary judgment should only be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Our

---

4. The Magistrate Judge also noted that "this Court is not the correct forum in which [Figueroa can] obtain relief," and suggested that "the appropriate avenue is to proceed against defendant before the Advisory Committee on Judicial Conduct." Figueroa, 39 F. Supp. 2d at 495 n.10.

6

task is to determine whether the moving party -- here, Judge Blackburn -- has shown " `that there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party.' " International Union, United Auto., Aerospace & Agric. Implement Workers of America v. Skinner Engine Co. , 188 F.3d 130, 137 (3d Cir. 1999) (quoting Miller v. Indiana Hosp., 843 F.2d 139, 143 (3d Cir. 1988)). We also review de novo the Magistrate Judge's determination that Judge Blackburn, as a judge of a court of limited jurisdiction, could be accorded judicial immunity, a purely legal question. See Carver v. Foerster, 102 F.3d 96, 99 (3d Cir. 1996).

Figueroa asserts, first, that municipal court judges are not entitled to judicial immunity. Judicial immunity, the argument goes, is exclusive to judges of superior or general jurisdiction and judges of limited or inferior jurisdiction, if they are protected at all, are protected only when acting within their jurisdiction.

Even if municipal court judges can receive the protection of judicial immunity, Figueroa continues, Judge Blackburn was not entitled to immunity because she acted in the absence of subject matter jurisdiction over the offenses with which he was charged. Figueroa invokes, first, the Wilentz directive and asserts, second, that N.J. Ct. R. 1:10-1, as amended in 1994, eliminated a municipal court's power to immediately execute a sentence for contempt of court.5 Thus, he submits, Judge Blackburn did not have jurisdiction to order his immediate arrest without granting a five-day stay of sentence and her act in so doing was, therefore, a nonjudicial act.6

---

5. It should be noted that N.J. Ct. R. 1:10-1 is not limited to municipal court judges. Pursuant to the rule, all state judges must stay execution of a contempt sentence.

6. Figueroa also submits that judicial immunity was not appropriate because, as a result of Judge Blackburn's actions, appellate review could be neither meaningful nor effective. In this connection, he argues that Judge Blackburn's failure to comply with N.J. Ct. R. 1:10-1 deprived him of his liberty without the ability to appeal -- an error that could not be subsequently corrected on appeal. For the same reasons that we reject Figueroa's other contentions, we reject this one and will not discuss it further.

7

A.

It is a well-settled principle of law that judges are generally "immune from a suit for money damages." Mireles v. Waco, 502 U.S. 9, 9 (1991) (per curiam); see also Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536 (1868) ("This doctrine is as old as the law, and its maintenance is essential to the impartial administration of justice."). The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages. See Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 347 (1872). The Supreme Court has made it clear that

> "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."

Stump v. Sparkman, 435 U.S. 349, 355-56 (1978) (quoting Bradley, 80 U.S. (13 Wall.) at 351). As a result, a judge's immunity from civil liability "is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial acts, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 11-12 (citations omitted).

While recognizing these principles, Figueroa contends that judges of courts of limited jurisdiction, as municipal court judges surely are, are not entitled to judicial immunity.[7]

_____

7. There is no dispute that Judge Blackburn, as a municipal court judge, is a judge of a court of limited jurisdiction. Municipal courts in New Jersey are statutorily created pursuant to N.J.S.A. 2B:12-1. Their limited jurisdiction is set forth at N.J.S.A. 2B:12-17:

> A municipal court has jurisdiction over the following cases within the territorial jurisdiction of the court:

a. Violation of county or municipal ordinances;

b. Violation of the motor vehicle and traffic la ws;

c. Disorderly persons offenses, petty disorderly p ersons offenses and

other non-indictable offenses except where exclusive jurisdiction is

given to the Superior Court;

8

In support of this contention, Figueroa relies on the following excerpt from Bradley, which echoed the Court's earlier pronouncement in Randall, 74 U.S. (7 Wall.) at 535-36:

> it was a general principle, applicable to all judicial officers, that they were not liable to a civil action for any judicial act done by them within their jurisdiction; that with reference to judges of limited and inferior authority it had been held that they were protected only when they acted within their jurisdiction; that if this were the case with respect to them, no such limitation existed with respect to judges of superior or general authority; that they were not liable in civil actions for their judicial acts, even when such acts were in excess of their jurisdiction.

80 U.S. (13 Wall.) at 351 (emphasis added).

Notwithstanding this language, we decline Figueroa's invitation to distinguish between judges of limited jurisdiction and those of general jurisdiction for purposes of judicial immunity based on dicta in cases decided well over one hundred years ago. See King v. Love, 766 F.2d 962, 966 (6th Cir.) ("[A]ny statements made by the Supreme Court about judges of courts having only limited or inferior jurisdiction were dicta."), cert. denied, 476 U.S. 971 (1985); see also Turner v. Raynes, 611 F.2d 92, 94 (5th Cir.) (opining that the Supreme Court's pronouncements on immunity for judges of courts of inferior or limited jurisdiction have been "circumspect"), cert. denied, 449 U.S. 900 (1980). The concept that judges exercising limited jurisdiction are protected only when acting within their jurisdiction has never been adopted by the Supreme Court

_____

d. Violations of the fish and game laws;

e. Proceedings to collect a penalty where jurisdic tion is granted by

statute;

f. Violations of laws regulating boating; and

g. Any other proceedings where jurisdiction is gra nted by statute.

Id.

and was merely assumed in cases in which the issue was not pertinent to the disposition. See, e.g., Randall, 74 U.S. (7 Wall.) at 535-36 (addressing the immunity of a judge of the "Superior Court of Massachusetts . . . a court of general jurisdiction"); see also Van Sickle v. Holloway, 791 F.2d 143, 1435 (10th Cir. 1986)(suggesting that judges of courts of limited jurisdiction are not immune when acting in excess of jurisdiction); McClain v. Brown, 587 F.2d 389, 390 (8th Cir. 1978) (same). Moreover, we do not believe that fleeting references made long ago are indicative of how the Supreme Court would view the issue today.

Cases of more recent vintage support our conclusion that, for purposes of judicial immunity, there should not be a distinction between judges of courts of limited and general jurisdiction. See Butz v. Economou, 438 U.S. 478, 513 (1978) (according judicial immunity to hearing officers performing adjudicatory functions within a federal administrative agency); Pierson v. Ray, 386 U.S. 547, 553-55 (1967) (according judicial immunity to a local municipal police justice, concluding that "this settled principle of law" was not abolished by 42 U.S.C. S 1983). In Butz, for example, the Court found "that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages." 438 U.S. at 512-13 (noting that "[t]he conflicts which federal hearing examiners seek to resolve are every bit as fractious as those which come to the court" and "[m]oreover, federal administrative law requires that agency adjudication contain many of the same safeguards as are available in the judicial process."). The Court also premised its conclusion that immunity was appropriate on the fact that the role of a federal hearing officer or an administrative law judge is " `functionally comparable' to that of a judge." Id. at 513.

It is clear that the role of a judge of a court of limited jurisdiction is "functionally comparable" to that of a judge of a court of general jurisdiction. Furthermore, courts of limited jurisdiction and courts of general jurisdiction are similar in many respects. In New Jersey, for example, municipal court proceedings are subject to de novo review

by the Superior Court and the traditional avenues of appellate review are thereafter available. See N.J. Ct. RR. 3:23, 3:24, and 7:13-1. We simply do not believe that the Supreme Court would find judicial immunity appropriate for executive branch officers exercising duties"functionally comparable" to that of a judge, Butz, 438 U.S. at 513, yet find it inappropriate for state judicial officers, albeit judicial officers of limited powers. See Turner, 611 F.2d at 96 (noting that "[i]f there exist anywhere adjudicative functionaries of specialized and limited powers, surely it is these officers of the executive branch").

Moreover, we find persuasive the fact that all of our sister circuit courts which have been presented with the issue of whether the doctrine of judicial immunity can be applied to judges of courts of limited jurisdiction have concluded that it can and, in so concluding, have not distinguished between judges of courts of limited jurisdiction and courts of general jurisdiction. See King, 766 F.2d at 968 (6th Cir.) ("[W]here a judge of a court of limited jurisdiction engages in judicial acts in deciding a case over which the court has subject matter jurisdiction, he is absolutely immune from suits for damages even if he exceeds his authority or his jurisdiction."); Turner, 611 F.2d at 97 (5th Cir.) (holding that justice of the peace "is entitled to the same immunity . . . he would be accorded were he the magistrate of a superior court"); see also Cok v. Cosentino , 876 F.2d 1, 2 (1st Cir. 1989) (per curiam)(holding that a family court justice is without question "protected by absolute immunity from civil liability for any normal and routine judicial act"); Pressly v. Gregory, 831 F.2d 514, 517 (4th Cir. 1987) (applying judicial immunity to bar plaintiff 's claims against state magistrate judges); Dykes v. Hosemann, 776 F.2d 942, 945 (11th Cir. 1985) (en banc) (per curiam) (according judicial immunity to state juvenile court judge), cert. denied, 479 U.S. 983 (1986); O'Neil v. City of Lake Oswego, 642 F.2d 367, 369 (9th Cir. 1981) (concluding that municipal court judge was entitled to judicial immunity despite the fact that he acted in excess of jurisdiction); Lopez v. Vanderwater, 620 F.2d 1229, 1234 (7th Cir.) (according judicial immunity to state associate judge), cert. denied, 449 U.S. 1028 (1980).8 We, too, have previously

_____

8. Illinois associate judges are permitted to"hear misdemeanor cases but not felony cases without special designation." Lopez, 620 F.2d at 1234 n.5.

upheld, albeit without much discussion, the grant of judicial immunity to a state justice of the peace and did not question the applicability of the doctrine to him. See Pennebaker v. Chamber, 437 F.2d 66, 67 (3d Cir. 1971) (per curiam) ("We think the action against the Justice of the Peace was properly dismissed as legally frivolous because he was sued for actions connected with the discharge of his judicial duties and was therefore immune from such suit.").

Finally, we are convinced that the policy reasons for according judges judicial immunity are equally as convincing with respect to judges exercising limited jurisdiction as they are with respect to those exercising general jurisdiction. As the Supreme Court has noted, "the doctrine of judicial immunity is thought to be in the best interests of `the proper administration of justice . . . [,for it allows] a judicial officer, in exercising the authority vested in him [to] be free to act upon his own convictions, without apprehension of personal consequences to himself.' " Stump, 435 U.S. at 363 (quoting Bradley, 80 U.S. (13 Wall.) at 347). Irrespective of a judge's status in the hierarchy of the judicial system, the need for independence and for freedom from the threat of a suit for damages is an indispensable ingredient in the proper administration of justice. Cf. Butz, 438 U.S. at 511 ("Judges have absolute immunity not because of their particular location within the Government but because of the special nature of their responsibilities.").

B.

Having concluded as a matter of law that judges of courts of limited jurisdiction are entitled to the protection of the doctrine of judicial immunity, we must now determine whether the immunity to which Judge Blackburn was entitled was otherwise overcome. As we have already indicated, a judge's "immunity is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial acts, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 11–12

12

(citations omitted). The facts of this case persuade us that neither set of circumstances is present here.

We address, first, Figueroa's contention that Judge Blackburn's order that the sentence for contempt of court be executed on the spot was not a judicial act because she was not empowered to order any such thing. Figueroa

correctly notes that the power of a New Jersey state judge to order the immediate service of a sentence for contempt is restricted by N.J. Ct. R. 1:10-1, which states that "[e]xecution of sentence shall be stayed forfive days following imposition" to allow the defendant to appeal and is further stayed if an appeal is, in fact, taken. Id. That Judge Blackburn may have erred in immediately ordering Figueroa to prison, however, does not alter the judicial nature of the act.

Factors which determine whether an act is a "judicial act" "relate to the nature of the act itself, i.e. , whether it is a function normally performed by a judge, and to the expectation of the parties, i.e., whether they dealt with the judge in his judicial capacity." Stump, 435 U.S. at 362. There can be little doubt that holding an individual in contempt is an act normally performed by a judge. See N.J. Ct. R. 1:10-1 (granting "[a] judge conducting a judicial proceeding . . . [the power to] adjudicate contempt summarily without an order to show cause"); DePiero v. City of Macedonia, 180 F.3d 770, 784 (6th Cir. 1999) ("The act of citing and incarcerating a party for contempt of court where the court has subject matter jurisdiction over the charge is also a judicial act to which absolute immunity attaches."), cert. denied, ___ U.S. ___, 120 S. Ct. 844 (2000); Homola v. McNamara, 59 F.3d 647 (7th Cir. 1995) (holding the same); Crooks v. Maynard, 913 F.2d 699, 700 (9th Cir. 1990) (declaring that judge's act of holding defendant in contempt "was clearly performing a judicial act"). Furthermore, because Figueroa was brought before Judge Blackburn for the purpose of being arraigned, he was before her and dealing with her in her judicial capacity. Ordering him to prison was a paradigm judicial act, and that act does not become nonjudicial because it was wrong.

Neither, as the Magistrate Judge properly concluded, did Judge Blackburn act in the complete absence of

13

jurisdiction. See Figueroa, 39 F.Supp.2d at 495. The Supreme Court has instructed that in determining the scope of a judge's jurisdiction, that jurisdiction

> must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action he took is in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the `clear absence of all jurisdiction.'

Stump, 435 U.S. at 356-57 (quoting Bradley, 80 U.S. (13 Wall.) at 351). Generally, therefore, " `where a court has

some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.' " Barnes v. Winchell, 105 F.3d 1111, 1122 (6th Cir. 1997). There is, of course, a difference between an act in excess of jurisdiction and one in the absence of jurisdiction:

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

Stump, 435 U.S. at 357 n.7.

Pursuant to a statutory grant of authority, municipal courts have jurisdiction over "[d]isorderly persons offenses, petty disorderly persons offenses and other non-indictable offenses except where exclusive jurisdiction is given to the Superior Court." N.J.S.A. 2B:12-17. Figueroa was charged with two counts of violating N.J.S.A. 2C:33-4a, a petty disorderly person's offense. See supra note 1. Judge Blackburn clearly had jurisdiction over such matters.

Figueroa argues, however, that even if ordering him to jail was a judicial act, Judge Blackburn did not have jurisdiction to do so because of the Wilentz directive. He is wrong. Judge Blackburn was presiding over a case, the subject matter of which fell within her jurisdiction. As a case properly on her docket and with the proper party

14

appearing before her, Judge Blackburn had, at a minimum, the power to manage the case and dispose of any issues relating to jurisdiction. Cf. In re Orthopedic"Bone Screw" Prods. Liab. Litig., 132 F.3d 152, 156 (3d Cir. 1997). Even if all she could or should have done was recognize that there was a directive requiring the case to be removed from the Municipal Court and transferred to the assignment judge of the Superior Court of the county, Judge Blackburn had jurisdiction to make that preliminary determination. Cf. id. ("[D]espite this inability of a court to decide the merits of a case over which it lacks jurisdiction, a court does have inherent authority both over its docket and over the persons appearing before it."). It is simply irrelevant for purposes of jurisdiction whether that determination was right or wrong.

Here, of course, Judge Blackburn did not decide the effect of the directive, if any, on her jurisdiction and it does

not appear that the directive was ever presented to her. It matters not whether that failure, if failure it be, was for that reason or because of Figueroa's conduct before her or her haste in holding him in contempt.9  What matters is that Judge Blackburn had jurisdiction to preside at the arraignment of offenses which fell within her jurisdiction. To find otherwise would require a judge to refrain from exercising jurisdiction prior to determining whether jurisdiction, in fact, exists.

Finally, we reject Figueroa's argument that Judge Blackburn's failure to grant him the five-day stay required by N.J. Ct. R. 1:10-1, because it was in error, was an act taken in the absence of jurisdiction. Taken to its logical

_____

9. To be sure, Judge Blackburn's actions in this case ignored the New Jersey Supreme Court's protocol for exercising summary contempt powers. See In re Daniels, 118 N.J. 51 (1990) (per curiam). The Court in Daniels declared: "With few exceptions, every contempt calls for an explanation. Thus, even in summary contempt proceedings [the defendant] should be informed of the charge and given an opportunity either to dispel any possible misunderstanding or to present any exculpatory facts that are not known to the court." Id. at 62. At the time of Figueroa's arrest, Judge Blackburn neither provided him with a reason for his arrest nor permitted him the opportunity to explain his actions. See supra note 2.

15

extreme, the argument is that whenever a judge makes an error of law or procedure in a matter properly before him or her, that judge is not entitled to judicial immunity or, stated somewhat differently, a judge does not have jurisdiction to make a mistake. That, of course, is preposterous. Judge Blackburn's failure to adhere to the requirements of N.J. Ct. R. 1:10-1 was, without question, as the Magistrate Judge found, an "inexplicable" procedural flaw. See Figueroa, 39 F. Supp. 2d at 494. It was, however, at most, an act taken in excess of jurisdiction, just as if a judge had imposed a sentence beyond the statutory limit or, recalling the Supreme Court's illustration in Stump, a judge had convicted a defendant of a nonexistent offense. See Tucker v. Outwater, 118 F.3d 930, 936 (2d Cir.) (declaring that a judge's failure to follow local procedural rules in arraigning a defendant is an act in excess of jurisdiction, but such "mistakes are precisely the kind of `procedural errors,' albeit `grave,' that do not deprive a judge of subject matter jurisdiction -- or judicial immunity") (quoting Stump, 435 U.S. at 359), cert. denied, 522 U.S. 997 (1997). Because Judge Blackburn had jurisdiction over the matter before her, she had jurisdiction to err and is entitled to judicial immunity.

III.

In sum, we hold that, with respect to the doctrine of judicial immunity, there is no distinction between judges of courts of limited jurisdiction and judges of courts of general jurisdiction. Moreover, Judge Blackburn's actions were judicial acts taken in a matter over which she had jurisdiction. We, therefore, will affirm.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit