NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3539
_____

EVER PEREZ,
                              Appellant

v.

TROOPER RICHARD GAMEZ; OFFICER ANDREW RICHARD CRONE;
BRIAN HUNTER; OFFICERS JOHN DOES 1–6;
PRESIDENT JUDGE TODD A. HOOVER; CAROLYN C. THOMPSON;
JUDGE BERNARD L. COATES, JR.; JUDGE DEBORAH E. CURCILLO;
JASON ANTHONY LAMBRINO; STEVEN ALLEN MIMM; JOSEPH MARTIN
GAVAZZI; DAUPHIN COUNTY JANE DOES 1–6
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-13-cv-01552)
District Judge:  Honorable Sylvia H. Rambo
_____

Submitted Under Third Circuit LAR 34.1(a)
April 29, 2015

Before:  FISHER, HARDIMAN and ROTH, *Circuit Judges*.

(Filed: July 20, 2015)

_____

OPINION[*]
_____

HARDIMAN, *Circuit Judge*.

Ever Perez appeals the District Court's order dismissing his federal civil rights action brought pursuant to 42 U.S.C. § 1983. We will affirm.

I

Perez is a Mexican citizen with a limited understanding of English. In June 2011, he was arrested because of mistaken identity. Perez spent 129 days in prison during which his case was continued four times because an interpreter was not available; each continuance was either at the request or acquiescence of the public defender. In August 2011, Perez retained private counsel, who moved to dismiss the charges because the police had arrested the wrong man. During a hearing in October 2011, an interpreter was provided, the arresting officer recognized that Perez was not the person he believed he was, and the Commonwealth agreed to dismiss the charges against Perez.

Perez filed suit in June 2013 in the U.S. District Court for the Middle District of Pennsylvania, alleging, among other things, violations of his substantive and procedural rights under the Due Process Clause of the Fourteenth Amendment. Specifically, he alleged that two Court of Common Pleas judges—Judge Bernard L. Coates, Jr. and Judge

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Deborah E. Curcillo—violated his rights when they failed to appoint an interpreter for him. He also alleged that President Judge Todd A. Hoover and District Court Administrator Carolyn C. Thompson violated his rights by failing to adopt policies and procedures that ensured interpreters were available for criminal defendants with limited English proficiency.

Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), and the District Court granted their motion. The District Court held that judicial immunity barred the claims against Judges Coates and Curcillo, legislative immunity barred the claims against President Judge Hoover, and Perez failed to state a claim upon which relief could be granted against District Court Administrator Thompson. This timely appeal followed.[1]

II

Perez asserts that the District Court erred in dismissing his claims on the ground of judicial immunity because the judges' failures to appoint an interpreter for him were not "judicial acts." He next argues that the District Court erred in dismissing his claims on the ground of legislative immunity because the failure to adopt procedures to ensure the appointment of interpreters was not a "legislative act." Finally, he asserts that the District Court erred in dismissing his claims against the District Court Administrator for failure to

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331 and we have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's dismissal under Rule 12(b)(6). *Glover v. FDIC*, 698 F.3d 139, 144 (3d Cir. 2012).

state a claim and that, in any event, he should be allowed to amend his complaint to name a different official as a defendant. We address each argument in turn.

A

Perez first argues that Judges Coates and Curcillo are not immune from suit because their failures to appoint an interpreter were ministerial or administrative acts, and it is well established that "judges are immune from suit under section 1983 for monetary damages arising from their judicial acts." *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). To determine whether this doctrine applies, we must decide (1) whether the judges' actions were "judicial" in nature; and (2) whether the judges acted in the "clear absence of all jurisdiction over the subject matter." *Id.* at 768–69 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 n.6 (1978)). Here, the only question is whether the judges' failures to act pursuant to a mandatory statute were judicial acts.

An act is judicial in nature if "it is a function normally performed by a judge" and the parties "dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. Appointing interpreters and continuing hearings are clear examples of acts "normally performed by a judge," and the allegations in the amended complaint show that Perez interacted with the judges in their "judicial capacity." *Id.* Nevertheless, Perez asserts that the failure to appoint an interpreter is not a judicial act because appointing an interpreter is mandatory under 42 Pa. Cons. Stat. § 4412(a) and is therefore a non-discretionary

4

administrative function. While Perez's argument has some appeal, it is ultimately unpersuasive.

Section 4412(a) states that "[u]pon request or sua sponte, if the presiding judicial officer determines that a principal party in interest or witness has a limited ability to speak or understand English, then a certified interpreter shall be appointed." Under a plain reading of the statute, once the presiding judicial officer determined that Perez had a limited ability to speak or understand English, an interpreter should have been appointed. *See id.*; *In re Garcia*, 984 A.2d 506, 511 (Pa. Super. Ct. 2009). And we agree with Perez that Judges Coates and Curcillo recognized (or at least did not dispute) that Perez needed an interpreter, yet they failed to appoint one. Instead, they relied on passive indications from defense counsel that the public defender's office would provide an interpreter for Perez. While this failure to act by the judges appears contrary to the requirements of § 4412(a), that does not make them amenable to suit. A judicial error in interpreting or applying the requirements of a statute is still a "judicial act" entitled to immunity from suit. *See Figueroa v. Blackburn*, 208 F.3d 435, 443 (3d Cir. 2000).

In *Figueroa*, a state municipal judge held a defendant in contempt of court and sentenced him to 30 days in prison. *Id.* at 438. Although a New Jersey Court Rule mandated that the execution of sentence for contempt be stayed for five days, the judge did not do so, resulting in a 15-day period of incarceration for the defendant. *Id.* We explained that the power of the judge to order the immediate service of a sentence for

contempt was restricted by the New Jersey Court Rule. Nonetheless, we found that the apparent error by the judge "does not alter the judicial nature of the act" and judicial immunity still applied. *Id.* at 443. Indeed, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump*, 435 U.S. at 356–57; *see also Dawson v. Newman*, 419 F.3d 656, 661–62 (7th Cir. 2005) (affording judicial immunity to a county judge even though he failed to comply with a statutory requirement).

Judges Coates and Curcillo both made a number of decisions in Perez's criminal proceedings, all of which constituted judicial acts. They continued Perez's hearings on multiple occasions when an interpreter was not available, they relied on the public defender's office to provide interpreters for Perez, and they failed to appoint an interpreter or request that one be appointed for Perez. While these decisions were detrimental to Perez, the fact remains that they were all judicial acts.

B

Perez next asserts that the District Court incorrectly shielded President Judge Hoover from § 1983 liability on the ground of legislative immunity. Perez argues that President Judge Hoover's alleged failure to establish policies or procedures that adequately provided interpreters was not a legislative act.

Legislators are entitled to immunity from liability for their legislative acts. *See Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998); *Gallas*, 211 F.3d at 773. And the Supreme

6

Court has recognized that judges sometimes perform acts entitled to legislative immunity. *See Forrester v. White*, 484 U.S. 219, 227 (1988); *Supreme Court of Va. v. Consumers Union of U.S.*, 446 U.S. 719, 731–34 (1980). Accordingly, we have established a two-part test to determine whether actions are to be regarded as legislative for immunity purposes: "(1) the action must be 'substantively' legislative, which requires that it involve a policy-making or line-drawing decision; and (2) the action must be 'procedurally' legislative, which requires that it be undertaken through established legislative procedures." *Acierno v. Cloutier*, 40 F.3d 597, 610 (3d Cir. 1994) (en banc).

It is clear that, had President Judge Hoover actually enacted policies or procedures establishing protocols for the appointment of interpreters, he would be entitled to legislative immunity. Under Pennsylvania law, the president judge of each Court of Common Pleas is the "executive and administrative head of the court" and is statutorily authorized to "promulgate all administrative rules and regulations" for the court. 42 Pa. Cons. Stat. § 325(e). Each Court of Common Pleas may make rules and orders as "the interest of justice or the business of the court may require," 42 Pa. Cons. Stat. § 323, and the adoption of any rule is regulated by the Rules of Judicial Administration, 201 Pa. Code Rule 103. As a president judge, Hoover is authorized to enact rules and regulations for the Dauphin County Court of Common Pleas and enjoys legislative immunity for actions taken pursuant to that authority. *See Consumers Union*, 446 U.S. at 731 (affording legislative immunity to justices of state supreme court when acting in their rulemaking

7

capacity); *Gallas*, 211 F.3d at 776–77 (holding that legislative immunity applied to state supreme court justices' promulgation of an administrative order); *Alia v. Mich. Supreme Court*, 906 F.2d 1100, 1106–07 (6th Cir. 1990) (finding that absolute legislative immunity applied to state court justices' promulgation of mediation rule).

Here, Perez argues that Hoover's alleged *failure* to enact such policies and procedures deprives him of immunity. We disagree. Although there is scant caselaw on this issue—presumably because legislators are rarely sued for actions they fail to take— the Supreme Court and at least one of our sister circuits have recognized that legislative immunity should apply for failures to act. "It would be strange public policy indeed to inform legislators that they are immune from liability if they decide to take action but not immune if they decide that action would be contrary to the public interest." *Sable v. Myers*, 563 F.3d 1120, 1126 n.2 (10th Cir. 2009); *see Consumers Union*, 446 U.S. at 734 (noting that judges' failure to amend bar admission rules would be entitled to legislative immunity). We agree and therefore conclude that the District Court did not err in affording legislative immunity to President Judge Hoover.

C

Finally, Perez argues that the District Court erred in dismissing his complaint against District Court Administrator Thompson for failure to state a claim. Perez made two factual allegations against Thompson—that she was the district court administrator for the Dauphin County Court of Common Pleas and that she and President Hoover failed

to adopt policies and procedures to ensure that interpreters were available for criminal defendants. The District Court held that Perez failed to adequately plead Thompson's personal involvement in the deprivation of his due process rights.

As the District Court noted, Perez relied on 42 Pa. Cons. Stat. § 4411, which states: "The Court Administrator may establish a program to appoint and use certified interpreters in judicial proceedings," § 4411(a), and "shall compile, maintain and disseminate a current list of interpreters," § 4411(b). However, this statute applies to the *court administrator of Pennsylvania* and therefore does not grant authority to or impose obligations on *district court administrators* such as Thompson. *See* 42 Pa. Cons. Stat. § 4402. Perez's amended complaint did not make any other allegations against Thompson that would support an affirmative duty to create policies or procedures regarding interpreters. Moreover, even assuming that Thompson was required to implement policies and procedures for appointing interpreters, Perez did not plead any personal involvement by Thompson in the deprivation of Perez's rights. *See C.H. ex rel. Z. H. v. Oliva*, 226 F.3d 198, 201 (3d Cir. 2000) (en banc) ("It is, of course, well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved."). Accordingly, the District Court did not err in dismissing Perez's complaint against Thompson for failure to state a claim.

Acknowledging that the amended complaint failed to distinguish between the state court administrator and the district court administrator, Perez requests leave to amend his

complaint for the first time on appeal. "The liberal standard announced in Fed. R. Civ. Proc. 15(a) becomes less flexible after a final judgment is entered." *Werner v. Werner*, 267 F.3d 288, 296 (3d Cir. 2001). After final judgment, leave to amend will be granted only sparingly and will be the "long-odds exception." *Id.* (citation omitted). In addition, "[a]bsent exceptional circumstances, this Court will not consider issues raised for the first time on appeal." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 261 (3d Cir. 2009) (quoting *Del. Nation v. Pennsylvania*, 446 F.3d 410, 416 (3d Cir. 2006)). As Perez has provided no compelling reason for such a late amendment, we will deny his request to amend his complaint.

## III

For the reasons stated, we will affirm the order of the District Court.